UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

---------------------------------------------------------------x
:
In re                                                         :     Chapter 11
:
PAYLESS HOLDINGS, LLC, *et al.*,[1]                           :     Case No. 17-42267-659
:
:     Jointly Administered
:
Debtors.                                                      :
---------------------------------------------------------------x

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE TIME WITHIN WHICH THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of Payless Holdings, LLC and its affiliated debtors (collectively, the "Debtors") hereby submits its response (the "Response") to the *Debtors' Motion for Entry of an Order Extending the Time Within which the Debtors Must Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [Docket No. 280] (the "Motion"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  The Committee understands the necessity of the relief requested in the Motion and does not object to it, but files this Response to inform the Court of the Committee's concern

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [N/A]; WBG-PSS Holdings LLC [N/A]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [N/A]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; Collective Brands Logistics, Limited [6466]; Dynamic Assets Limited [1978]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179]. The location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is: c/o Payless ShoeSource, Inc., 3231 SE 6th Avenue, Topeka, KS 66607, United States.

regarding the Debtors' nonpayment of potentially tens of millions of dollars of stub rent for the period of April 4, 2017 through April 30, 2017 ("Stub Rent") to any of the landlords for the Debtors' use and occupancy of the premises subject to the approximately 3,500 leases for which they seek an extension of time to assume or reject.  Such concern is compounded by the fact that the Debtors are also seeking pursuant to the pending DIP Motion (defined below) a waiver of their valuable rights under section 506(c) of the Bankruptcy Code to surcharge the lenders' collateral for the costs of administering these estates.[2]  For the reasons set forth below, immediate payment of stub rent is customary throughout the country, especially for the Closing Stores (defined below), and should be paid here pursuant to sections 365(d)(3) and/or 503(b)(1)(a) of the Bankruptcy Code.  *See*, *e.g.*, *In re Eastern Outfitters, LLC, et al.*, Case No. 17-10243 (LSS) (Bankr. D. Del. Feb. 5, 2017) (cases filed on February 5, 2017; stub rent paid by April 24, 2017); *In re hhgregg, Inc., et al.*, Case No. 17-01302-11 (RLM) (Bankr. S.D. Ind. Mar. 6, 2017) (cases filed on March 6, 2017; stub rent to be paid by June 30, 2017); *In re Hancock Fabrics, Inc., et al.*, Case No. 16-10296 (BLS) (Bankr. D. Del. Feb. 2, 2016) (cases filed on Feb. 2, 2017; stub rent paid by April 22, 2017); *In re Golfsmith International Holdings, Inc., et al.*, Case No. 16-12033 (LSS) (Bankr. D. Del. Sept. 14, 2016) (agreed to escrow stub rent for closing stores immediately); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Jul. 19, 2015) (agreed to pay stub rent for initial closing stores immediately).

## BACKGROUND

2. On April 4, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating

---

[2] The final hearing on the DIP Motion is being continued to May 15, 2017 at 10:00 a.m. (Central Time) and the objection deadline is being continued to May 9, 2017.  The Committee reserves all rights to object to the DIP Motion.

2

DOCS_NY:35920.6

their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

3. On April 14, 2017, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee consists of: (i) Moda Shoe, Ltd.; (ii) Qingdao Doublestar Mingren Imp. And Exp. Co.; (iii) C and C Accord, Ltd.; (iv) The Asean Corporation, Ltd.; (v) GGP Limited Partnership; (vi) Simon Property Group, Inc.; and (vii) Brixmore Property Group, Inc.

4. On the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 36] (the "DIP Motion").

5. As set forth in the *Declaration of Michael Schwindle in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* [Docket No. 34] (the "Schwindle Declaration"), prepetition the Debtors worked with a steering committee of their prepetition secured lenders to develop a "comprehensive financing, restructuring and recapitalization plan that will be implemented through these chapter 11 cases" that is memorialized in the DIP financing agreements and the Restructuring Support Agreement (the "RSA"). Schwindle Declaration at ¶6.[3] Pursuant to the RSA and DIP financing agreements, the proposed milestone for the effective date of a plan is August 10, 2017.

---

[3] The Committee does not admit the truth or accuracy of the statements in the Schwindle Declaration, but for the sole purpose of this Response will assume that they are true and correct.

3

DOCS_NY:35920.6

6. As set forth in the Motion, the Debtors are party to approximately 3,500 unexpired real property leases (the "Leases"), a non-exhaustive list of which is attached as Exhibit A to the Motion. The present deadline to assume or reject the Leases pursuant to section 365(d)(4) of the Bankruptcy Code (the "365(d)(4) Deadline") expires on August 2, 2017. The Debtors seek the full 90-day extension of the 365(d)(4) Deadline from August 2, 2017 to October 31, 2017 to enable them to rationalize their brick and mortar footprint and renegotiate their lease portfolio, which is an integral component of their proposed restructuring.

7. The Debtors acknowledge that a "key component of the Debtors' restructuring process and path to maximizing the value of the Debtors' estates is the rationalization of the Debtors' existing fleet of nearly 3,500 stores in North America." Motion at ¶7. The RSA requires the Debtors to successfully negotiate substantial annualized store rent reductions in order to access the financing necessary to emerge from chapter 11 as a going concern. *See id.* Accordingly, the Debtors are "in the middle of a comprehensive process to renegotiate the leases for the majority of its store fleet … . To the extent these renegotiations are not successful and sufficient savings are not obtained for any given store lease, such store will be closed pursuant to 'going out of business' sale followed by lease rejection." *Id*.

8. The Debtors' management team and advisors have ultimately determined that it is appropriate to immediately close approximately 389 unprofitable brick and mortar store locations (the "Closing Stores").[4] *See* Schwindle Declaration at ¶44. The Debtors intend to further evaluate for closure approximately 3,000 additional stores out of their existing fleet and additional store closures (perhaps up to 400) are intended to take place. *See id.* The Debtors

---

[4] The Debtors seek approval of store closing procedures pursuant to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 15] filed on the Petition Date.

4

estimate that the store closing process will take eight to ten weeks after the Petition Date. *See id.* at ¶47.

## RESPONSE

9. The Committee does not object to the request for an extension of the 365(d)(4) Deadline and supports a successful restructuring of these businesses, but not at the benefit of the lenders and expense of its constituents. The Debtors have failed to pay Stub Rent to any of the landlords for the Debtors' use and occupancy of the premises subject to the Leases. The DIP financing budget does not include Stub Rent and the Debtors do not intend to immediately pay it.

10. The Committee is concerned that the Debtors have not agreed to immediately pay Stub Rent, especially for the Closing Stores, and intend instead to negotiate the payment of such rent in connection with the lease concession process that is expected to continue for the next eight to ten week period. Contrary to this approach, it is customary for stub rent to be paid with respect to GOB stores, even if such rent is not paid with respect to go-forward stores. *See*, *e.g.*, *In re Eastern Outfitters, LLC, et al.*, Case No. 17-10243 (LSS) (Bankr. D. Del. Feb. 5, 2017) (cases filed on February 5, 2017; stub rent paid by April 24, 2017); *In re hhgregg, Inc., et al.*, Case No. 17-01302-11 (RLM) (Bankr. S.D. Ind. Mar. 6, 2017) (cases filed on March 6, 2017; stub rent to be paid by June 30, 2017); *In re Hancock Fabrics, Inc., et al.*, Case No. 16-10296 (BLS) (Bankr. D. Del. Feb. 2, 2016) (cases filed on Feb. 2, 2017; stub rent paid by April 22, 2017); *In re Golfsmith International Holdings, Inc., et al.*, Case No. 16-12033 (LSS) (Bankr. D. Del. Sept. 14, 2016) (agreed to escrow stub rent for closing stores immediately); *In re The Great Atlantic & Pacific Tea Company, Inc., et al.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Jul. 19, 2015) (agreed to pay stub rent for initial closing stores immediately).

11. The lenders should not be permitted to exploit the Debtors and unsecured creditors by forcing unsecured creditors to carry the freight in these cases by withholding of the immediate payment of Stub Rent. The Debtors, and thereby the lenders, have received and will continue to receive the benefit of the use and occupancy of these premises, but now refuse to pay for such benefit thus putting lessors at a significant disadvantage. The nonpayment of Stub Rent, coupled with the proposed section 506(c) waiver, unfairly impacts the rights of lessors on whose backs the Debtors and lenders prefer to conduct the reorganization process and these cases. The Debtors cannot have it both ways – they cannot acknowledge that store closings and lease rationalization constitute key components of their proposed restructuring and benefit from the use and occupancy of these premises during this process while depriving lessors of payment for Stub Rent. It is simply inequitable and uncustomary to allow the Debtors to use the premises, reaping an actual and necessary benefit to the estates, while not paying Stub Rent.

12. The Committee has raised this concern with the Debtors and lenders as part of the ongoing negotiations regarding the final DIP financing order, and if such concern is not resolved in connection therewith will raise it in connection with litigation regarding final approval of the DIP Motion.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: May 2, 2017

*/s/Matthew S. Layfield*
**POLSINELLI P.C.**
Matthew S. Layfield, Esq.
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
Telephone: (314) 889-8000

*Proposed Local Counsel for the Official Committee of Unsecured Creditors*

**PACHULSKI STANG ZIEHL & JONES LLP**

Robert J. Feinstein, Esq.
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700

Bradford J. Sandler, Esq.
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100

Jeffrey N. Pomerantz, Esq.
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067-4100
Telephone: (310) 227-6910

*Proposed Lead Counsel for the Official Committee of Unsecured Creditors*