**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Case No. 17-42267-659 |
| | ) CHAPTER 11 |
| PAYLESS HOLDINGS LLC, <u>et al.</u>, | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing Date & Time: |
| | ) May 31, 2017 at 10:00 a.m. |
| | ) (prevailing Central Time) |
| | ) |
| | ) Hearing Location: |
| | ) Courtroom 7 North |
| | ) |
| | ) Related to Docket No.: 643 |

**RESPONSE OF DEBTORS TO APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING RETENTION OF BACK BAY MANAGEMENT CORPORATION AND ITS DIVISION, THE MICHEL-SHAKED GROUP, AS EXPERT CONSULTANT AND DR. ISRAEL SHAKED AS EXPERT WITNESS *NUNC PRO TUNC***

The debtors and debtors in possession in the above-captioned cases ("Debtors"), through their counsel Munger, Tolles & Olson and at the direction of Mr. Charles Cremens, the independent director of the Debtors ("Independent Director"), hereby respond to the Application of the Official Committee of Unsecured Creditors for Entry of an Order Under 11 U.S.C. §§ 1103(a) and 328(a) and Fed. R. Bankr. P. 2014(a) Authorizing Retention of Back Bay Management Corporation and It's Division, The Michel-Shaked Group, as Expert Consultant and Dr. Israel Shaked as Expert Witness *Nunc Pro Tunc* to April 27, 2017 [Docket No. 643] (the "Shaked Application").

1. The Shaked Application seeks the engagement of a financial professional, an expert witness, by the Official Committee of Unsecured Creditors ("Committee"). The Committee has also asked to hire Province, Inc. as financial advisor to the Committee [Docket No. 632] ("FA Application"). The FA Application provides Province with a very broad mandate, to assist the Committee with, among other things, the "financial condition" of the Debtors, "how to react to the Debtors' plan or in formulating and implementing" the Committee's own plan, preparing or reviewing "valuations," advising the Committee on the "Debtors financial reports," "the state of these chapter 11 cases," "negotiations with the Debtors, lenders and third parties," and "participating as a witness in hearings before the bankruptcy court." FA Application ¶ 8.

2. The Shaked Application also seeks services for "valuation of the Debtors' business," and asserts that the work of this professional will "not be duplicative of services being performed by other professionals retained by the Committee." Shaked Application ¶ 8. Neither application explains how these services are not completely duplicative, how duplication will be minimized, or why one financial advisor – Province, is not completely adequate. Based upon its application and website, Province appears more than qualified to perform a valuation or solvency analysis.

3. If the difference between the two applications is simply that the Shaked Application seeks to engage an expert trial witness - Professor Shaked, the application appears premature. The Committee is investigating potential estate causes of action related to transactions in 2012, 2013, and 2014, not proceeding to trial. In addition, since the commencement of these cases, the Debtors and the significant case parties in interest have sought an efficient and expeditious timeline for exit of bankruptcy as set forth in the restructuring support agreement under which the Debtors will be recapitalized and emerge from bankruptcy as a going concern.

The hiring of a trial expert by a committee seems antithetical to that goal. For these reasons, the Debtors ask that consideration of the Shaked Application be deferred pending confirmation, but if approved, be limited to consulting services, conditioned on measures to ensure no duplication of work, and to prevent any delay to the confirmation schedule negotiated with major stakeholders to which the UCC has not objected.

4. The need to guard against duplication, excess, and delay from the requested retention of an expert witness is underscored by the circumstances of the Debtors cases and in particular the presence of the Independent Director.

**Background**

5. In connection with the consideration of the Shaked Application, context and background is important to assist the Court. Mr. Cremens was appointed to Payless Holdings LLC's Board of Directors in January 2017.[1] Mr. Cremens has extensive business and restructuring experience, as well as a strong background as an independent director. He has more than thirty years of experience restructuring public and private companies and has served as the President and/or Chief Executive Officer of several large and complex companies during their restructurings, including Spirit Finance Corporation, Conseco Finance Corporation, and WMF Group, Ltd. Prior to those assignments, Mr. Cremens served as the Chief Investment Officer of Beacon Properties Corp., President of Real Estate Investments at Aetna Inc., and held various executive management positions at the Bank of Boston. Mr. Cremens has served as an independent or disinterested director for various companies in financial distress and restructurings. His present director engagements include Bluestem Brands (f/k/a Capmark

---

[1] Following his appointment, the Independent Director requested that Payless Holdings retain MTO as independent legal counsel to act at the direction of the Independent Director for conflicts matters. A Final Order Authorizing Debtors to Retain and Employ Munger, Tolles & Olson LLP as Counsel, Effective as of the Petition Date, was entered on May 9, 2017 [Docket No. 641].

Financial Group), U.S. Steel Canada, iHeartMedia Inc., Payless Holdings LLC, and Energy Future Intermediate Holding Company LLC (EFIH).[2]

6. Since his appointment, Mr. Cremens has actively participated as a member of the board with management and the advisors on the restructuring of Payless. This includes approval of the commencement of these cases and entry into the Restructuring Support Agreement ("RSA") with a group of consenting creditors holding more than 66.6% of the first lien and second lien debt issued by the Debtors, whose deficiency claims are the largest claims in the pool of unsecured creditors. The RSA provides the necessary capital to fund these chapter 11 cases and to fund the necessary exit financing to allow the Debtors to emerge from chapter 11 as a reorganized, going concern. Absent these commitments to facilitate reorganization at the start of these cases, the Debtors faced the possibility of loss of both going concern value of the world-wide Payless enterprise and the significant increase in creditor claims related to rejection of more than 3,000 store leases, termination of tens of thousands of employees, and elimination of ongoing relations with trade creditors. *See* Declaration of Michael Schwindle in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings ¶¶ 4, 6, & 7 [Docket No. 34]. The efforts to achieve the necessary debtor in possession financing and exit financing in the RSA took place over several weeks starting in early March and culminated in finalization of the RSA only on the eve of filing these cases on April 4, 2017.

7. In addition to participating as a member of the Board in decisions regarding the restructuring, Mr. Cremens also has been conducting an investigation ("Independent

---

[2] As the disinterested EFIH director, Mr. Cremens evaluated claims among various entities within the EFH structure, and negotiated a settlement with the disinterested directors of the other entities. The Bankruptcy Court overseeing the chapter 11 proceedings of EFH and its affiliates approved that settlement, and particularly noted that "[t]he record overwhelmingly establishes that the disinterested directors acted prudently, were fully informed, took their fiduciary duties seriously, advocated and negotiated hard on behalf of their estates and acted at all times with complete integrity." (In re Energy Future Holdings Corp., U.S. Bktcy Court, Dist. Del., Tr. 12/3/2015 at 19.)

4

Investigation") into potential claims the Debtors might have against the equity holders, Golden Gate Capital and Blum Capital ("Sponsors"). That evaluation is ongoing and covers the same transactions (as well as other transactions such as management and transaction fees) for which the Committee requests expert testimony in the Shaked Application. In particular, MTO, with the assistance of the existing financial professionals of the Debtors, has been investigating, among other transactions, dividends paid by the Debtors on February 28, 2013 and March 10, 2014 ("Dividends"), and related financing transactions, and the 2012 acquisition of Payless by the Sponsors (collectively with the Dividends, the "Transactions"). As part of that review, the investigation includes the evaluation of the work of Duff & Phelps, who was engaged to evaluate the solvency of the pertinent companies at the time of each Transaction, and whether the Transactions would render the companies insolvent. For each Transaction, Duff & Phelps issued an opinion that the companies were indeed solvent. Those opinions were submitted to the Debtors' Boards of Directors, with accompanying presentations by Duff & Phelps, in connection with the Boards' approvals of each of the Transactions.

8. The Independent Investigation has included a legal analysis and factual investigation of the Transactions to determine whether they give rise to potential claims against the Sponsors ("Potential Claims"). The efforts by MTO and the Debtors existing financial advisors to date have included, among other activities, the review and evaluation of hundreds of documents pertinent to the Transactions, including transaction documents, related Board minutes and presentations, the Duff & Phelps opinions, presentations and related materials, financial projections and of course publicly-available materials.

9. In addition, MTO has interviewed twelve potential witnesses from the Debtors, the Sponsors, and Duff & Phelps and engaged in several calls with Debtors'

5

management involving follow-up questions or additional background. MTO also has had, and continues to have, discussions with the Debtors existing financial advisors regarding the Debtors' business and history, the Transactions, and considerations relating to Potential Claims,. MTO and the financial advisors are also analyzing the many external factors that potentially bear on the reasonableness of the prior solvency determinations by Duff & Phelps and the Board.  For example, the facts surrounding the financings that funded the Dividends, the institutional lenders' interest in participating in the financings, the trading history of the first and second lien debt, external economic factors impacting the performance of the Debtors, rating agency reports, and auditor reports issued by PriceWaterhouseCoopers for the fiscal years following the Transactions.

10. Throughout the course of the Independent Investigation, MTO has taken direction from Mr. Cremens, the privilege over the investigation is controlled by Mr. Cremens, and MTO has regularly consulted with and reported to Mr. Cremens on the status of the investigation and the facts surrounding the Potential Claims.  Of importance on this subject, in connection of his approval of the RSA, Mr. Cremens required that any release of estate claims under the proposed plan be subject to amendment following his completion of the Independent Investigation.  The Independent Investigation has not been concluded at this time.

## Status and Future of Investigation

11. One of the reasons the Independent Investigation has not concluded is to provide time for the Committee to investigate the Transactions.  Shortly after the appointment of the Committee and its engagement of counsel, on April 24, 2017, MTO spoke with Committee counsel regarding the Independent Investigation and subsequently met with Committee counsel in person on May 2, 2017 to review the work done on behalf of Mr. Cremens.  MTO subsequently produced documents it had reviewed and worked with the Committee on an informal, cooperative

basis to gather and produce additional documents requested as part of its investigation and diligence of the Transactions. These efforts have included responding to more than 20 document requests made by the Committee on May 5, 2017, which were directed at the Debtors, the Sponsors, and Duff & Phelps, gathering and producing several hundred documents over the last 19 days, responding to several additional information requests by the Committee, and having status calls with the Committee on May 15 and May 19, 2017. MTO has stressed to the Committee that it seeks to engage cooperatively on its investigation. In particular, MTO has emphasized that Mr. Cremens seeks the input of the Committee on the Transactions and Potential Claims before reaching any final conclusions and to engage with the Committee on the resolution and treatment of the Potential Claims under the proposed plan, as appropriate.

12.  To be clear, it has been and remains the intent of the Independent Director to continue working with the Debtors retained financial advisors to complete the Independent Investigation and to solicit the view and input and analyses of the Committee and other creditor groups before reaching a final decision and recommendation regarding the Potential Claims.

**Conclusion and Request**

13.  In light of the ongoing efforts by the Debtors to conduct an Independent Investigation, the efforts of other constituents in these cases to analyze the Transactions and Potential Claims, and the need to meet the milestones to achieve a going concern reorganization to maximize value for all creditors and stakeholders, the Debtors now raise the response outlined above to the Shaked Application. Specifically, the Debtors request that the Shaked Application be suspended until further Court order, but that if it is approved that it be limited to consulting services only, that there be sufficient safeguards in place to ensure there are no duplication in

services provided by the two financial professionals for the Committee, and that there be absolutely no delay in the case timeline and confirmation schedule.

| | |
|---|---|
| Dated:  May 24, 2017<br>St. Louis, Missouri | /s/ *Steven N. Cousins*<br>Steven N. Cousins MO 30788<br>Erin M. Edelman MO 67374<br>John G. Willard MO 67049<br>Armstrong Teasdale LLP<br>7700 Forsyth Boulevard, Suite 1800<br>St. Louis, MO 63105<br>Telephone:  (314) 621-5070<br>Facsimile:  (314) 621-2239<br>Email:  scousins@armstrongteasdale.com<br>Email:  eedelman@armstrongteasdale.com<br>Email:  jwillard@armstrongteasdale.com<br><br>Thomas B. Walper (*admitted pro hac vice*)<br>Kevin S. Allred (*admitted pro hac vice*)<br>Seth Goldman (*admitted pro hac vice*)<br>Munger, Tolles & Olson LLP<br>350 South Grand Avenue, 50th Floor<br>Los Angeles, California 90071<br>Telephone:  (213) 683-9100<br>Facsimile:   (213) 687-3702<br>Email: thomas.walper@mto.com<br>Email: kevin.allred@mto.com<br>Email: seth.goldman@mto.com<br><br>*Counsel for Debtors<br>and Debtors in Possession* |