# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 17-42267-659 |
|  | ) | CHAPTER 11 |
| PAYLESS HOLDINGS LLC, *et al.*,[1] | ) |  |
|  | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

---

## FIRST AMENDED JOINT PLAN OF
## REORGANIZATION OF PAYLESS HOLDINGS LLC AND ITS
## DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Cristine F. Pirro (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

-and-

James H.M. Sprayregen, P.C.
William A. Guerrieri (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Steven N. Cousins (MO 30788)
Erin M. Edelman (MO 67374)
John G. Willard (MO 67049)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
Telephone:     (314) 621-5070
Facsimile:     (314) 621-2239

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors (as defined herein) in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [2940]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; Collective Brands Logistics, Limited [6466]; Dynamic Assets Limited [1978]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179]. The location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is: c/o Payless ShoeSource Inc. 3231 SE 6th Avenue Topeka, KS 66607 United States.

1

# TABLE OF CONTENTS

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION  OF TIME, GOVERNING LAW, AND
DEFINED TERMS ...................................................................................................................1
    A.    Rules of Interpretation, Computation of Time, and Governing Law ................................1
    B.    Defined Terms ...................................................................................................................2

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, ABL DIP CLAIMS, TERM DIP
FACILITY CLAIMS, AND UNITED STATES TRUSTEE STATUTORY FEE........................18
    A.    Administrative Claims ....................................................................................................19
    B.    Administrative Claims Bar Date ......................................................................................19
    C.    Professional Compensation ..............................................................................................20
    D.    Priority Tax Claims ..........................................................................................................21
    E.    ABL DIP Claims ..............................................................................................................21
    F.    Term DIP Facility Claims ................................................................................................21
    G.    United States Trustee Statutory Fees ...............................................................................21

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ...........22
    A.    Summary ..........................................................................................................................22
    B.    Classification and Treatment of Claims and Interests.....................................................23
    C.    Special Provision Governing Unimpaired Claims ...........................................................28
    D.    Acceptance or Rejection of the Plan ................................................................................28
    E.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................28
    F.    Elimination of Vacant Classes ........................................................................................28

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ..........................................................29
    A.    General Settlement of Claims ..........................................................................................29
    B.    Restructuring Transactions...............................................................................................29
    C.    The New Credit Facilities and Approval of the New Credit Facilities............................29
    D.    Corporate Existence .........................................................................................................30
    E.    Vesting of Assets in the Reorganized Debtors ................................................................31
    F.    Cancellation of Prepetition Credit Agreements and Equity Interests...............................31
    G.    Sources of Cash for Plan Distributions and Transfers of Funds Among Debtors .........................32
    H.    Payment of Commitment Fees .........................................................................................32
    I.    Worldwide GUC Cash-Out Election ...............................................................................33
    J.    Effectuating Documents and Further Transactions .........................................................33
    K.    Issuance of New Equity ...................................................................................................33
    L.    Section 1145 Exemption ..................................................................................................34
    M.    New Organizational Documents ......................................................................................34
    N.    Exemption from Certain Transfer Taxes and Recording Fees .........................................34
    O.    Directors and Officers of Reorganized Holdings and Other Reorganized Debtors.........................35
    P.    Avoidance Actions ..........................................................................................................35
    Q.    Preservation of Causes of Action ....................................................................................35
    R.    Directors and Officers Insurance Policies and Agreements .............................................36
    S.    Compensation and Benefits Programs .............................................................................36

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................38
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .....................38
    B.    Indemnification Obligations.............................................................................................38
    C.    Directors and Officers Insurance Policies and Agreements .............................................39
    D.    Insurance Policies ............................................................................................................39
    E.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ...................39
    F.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ....................41
    G.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ..........41

i

H.      Modifications, Amendments, Supplements, Restatements, or Other Agreements..........................41
I.      Contracts and Leases Entered Into After the Petition Date .................................................................42
J.      Reservation of Rights...........................................................................................................................42
K.      Nonoccurrence of Effective Date........................................................................................................42

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...............................................................42
A.      Distributions for Claims Allowed as of the Effective Date.................................................................42
B.      Disputed Unsecured Claims Reserves..................................................................................................42
C.      Distributions on Account of Claims Allowed After the Effective Date..............................................44
D.      Timing and Calculation of Amounts to Be Distributed.......................................................................45
E.      Delivery and Distributions and Undeliverable or Unclaimed Distributions ......................................45
F.      Compliance with Tax Requirements/Allocations.................................................................................49
G.      Setoffs..................................................................................................................................................49
H.      Foreign Currency Exchange Rate .......................................................................................................50
I.      Claims Paid or Payable by Third Parties.............................................................................................50

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ....................................................................................................................................51
A.      Allowance of Claims............................................................................................................................51
B.      Claims Administration Responsibilities...............................................................................................51
C.      Estimation of Claims............................................................................................................................51
D.      Adjustment to Claims Without Objection............................................................................................52
E.      Time to File Objections to Claims .......................................................................................................52
F.      Disallowance of Claims .......................................................................................................................52
G.      Amendments to Claim..........................................................................................................................52
H.      No Distribution Pending Allowance ....................................................................................................53
I.      Distribution After Allowance ..............................................................................................................53

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN ............................................................................................................................................................53
A.      Conditions Precedent to the Confirmation of the Plan ........................................................................53
B.      Conditions Precedent to Effective Date ...............................................................................................53
C.      Waiver of Conditions...........................................................................................................................54
D.      Substantial Consummation ..................................................................................................................54
E.      Effect of Non Occurrence of Conditions to the Effective Date...........................................................54

ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ....................55
A.      Compromise and Settlement ................................................................................................................55
B.      Subordinated Claims ............................................................................................................................55
C.      Discharge of Claims and Termination of Equity Interests ..................................................................55
D.      Release of Liens ...................................................................................................................................56
E.      Debtor Release .....................................................................................................................................56
F.      Third-Party Release .............................................................................................................................58
G.      Exculpation ..........................................................................................................................................59
H.      Injunction .............................................................................................................................................59
I.      No Release of Any Claims Held by the United States .........................................................................59

ARTICLE X. RETENTION OF JURISDICTION ........................................................................................60

ARTICLE XI. MODIFICATION, REVOCATION AND WITHDRAWAL OF THE PLAN.......................62
A.      Modification of Plan ............................................................................................................................62
B.      Effect of Confirmation on Modifications.............................................................................................62
C.      Revocation of Plan ..............................................................................................................................62

ii

ARTICLE XII. MISCELLANEOUS PROVISIONS ........................................................................... 63

    A.      Immediate Binding Effect ........................................................................................ 63
    B.      Additional Documents ............................................................................................. 63
    C.      Reservation of Rights .............................................................................................. 63
    D.      Successors and Assigns ........................................................................................... 64
    E.      Service of Documents .............................................................................................. 64
    F.      Term of Injunctions or Stays .................................................................................. 64
    G.      Entire Agreement .................................................................................................... 64
    H.      Governing Law ........................................................................................................ 65
    I.      Exhibits ................................................................................................................... 65
    J.      Nonseverability of Plan Provisions Upon Confirmation ....................................... 65
    K.      Closing of Chapter 11 Cases ................................................................................... 65
    L.      Conflicts .................................................................................................................. 66
    M.      Dissolution of Creditors' Committee ...................................................................... 66
    N.      Section 1125(e) Good Faith Compliance ................................................................ 66
    O.      Further Assurances .................................................................................................. 66
    P.      No Stay of Confirmation Order ............................................................................... 66
    Q.      Waiver or Estoppel .................................................................................................. 66
    R.      Payment of Restructuring Support Advisor and DIP Document Fees ..................... 67

iii

## PROPOSED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF PAYLESS HOLDINGS LLC AND ITS DEBTOR AFFILIATES

Payless Holdings LLC and 28 of its debtor affiliates as debtors and debtors in possession (collectively, the "Debtors")[2] propose the following joint plan of reorganization for the resolution of the outstanding claims against, and equity interests in, the Debtors. These Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections, and contemplated future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan. Each of the Debtors is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND DEFINED TERMS

A.    *Rules of Interpretation, Computation of Time, and Governing Law*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the terms of such document or exhibit and subject to the Restructuring Support Agreement; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular

---

[2]    The Debtors (as defined herein) in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Payless Holdings LLC [5704]; Payless Intermediate Holdings LLC [5190]; WBG-PSS Holdings LLC [0673]; Payless Inc. [3160]; Payless Finance, Inc. [2101]; Collective Brands Services, Inc. [7266]; PSS Delaware Company 4, Inc. [1466]; Shoe Sourcing, Inc. [4075]; Payless ShoeSource, Inc. [4097]; Eastborough, Inc. [2803]; Payless Purchasing Services, Inc. [3043]; Payless ShoeSource Merchandising, Inc. [0946]; Payless Gold Value CO, Inc. [3581]; Payless ShoeSource Distribution, Inc. [0944]; Payless ShoeSource Worldwide, Inc. [6884]; Payless NYC, Inc. [4126]; Payless ShoeSource of Puerto Rico, Inc. [9017]; Payless Collective GP, LLC [2940]; Collective Licensing, LP [1256]; Collective Licensing International LLC [5451]; Clinch, LLC [9836]; Collective Brands Franchising Services, LLC [3636]; Payless International Franchising, LLC [6448]; Collective Brands Logistics, Limited [6466]; Dynamic Assets Limited [1978]; PSS Canada, Inc. [4969]; Payless ShoeSource Canada Inc. [4180]; Payless ShoeSource Canada GP Inc. [4182]; and Payless ShoeSource Canada LP [4179]. The location of Debtor Payless Holdings LLC's corporate headquarters and the Debtors' service address is:  c/o Payless ShoeSource Inc. 3231 SE 6th Avenue Topeka, KS 66607 United States.

portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

B.    *Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.    "<u>ABL DIP Agents</u>" means Wells Fargo Bank, National Association, as Administrative Agent, and TPG Specialty Lending, Inc. as Tranche A-1 Agent under the ABL DIP Facility.

2.    "<u>ABL DIP Claims</u>" means any claims arising from the Debtors' ABL DIP Facility, including all Obligations (as defined therein), interest due and owing as of the Effective Date, and, to the extent not otherwise paid in full, all fees, expenses, and other costs.

3.    "<u>ABL DIP Credit Agreement</u>" means that certain debtor-in-possession credit agreement, dated as of April 5, 2017 (as may be amended, restated, supplemented, or otherwise modified from time to time), by and among (a) certain of the Debtors, (b) Wells Fargo Bank, National Association as Collateral Agent, Administrative Agent, and Swing Line Lender (c) TPG Specialty Lending, Inc. as Tranche A-1 Agent, (d) Bank of America N.A. as Syndication Agent, (e) Wells Fargo Bank, National Association and Merrill Lynch, Pierce, Fenner & Smith Incorporated as Joint Lead Arrangers and Joint Bookrunners, and (f) the other ABL DIP Lenders.

4.    "<u>ABL DIP Facility</u>" means that certain $305 million postpetition debtor-in-possession financing facility, comprised of a senior secured superpriority revolving credit facility pursuant to the terms and conditions of the ABL DIP Credit Agreement.

5.    "<u>ABL DIP Lenders</u>" means those lenders party to the ABL DIP Credit Agreement.

6.    "<u>Accrued Professional Compensation</u>" means, at any given time, all accrued, contingent, and/or unpaid fees and expenses (including success fees) for legal, financial advisory, accounting, and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330, 331, or 363 of the Bankruptcy Code or otherwise rendered allowable before the Effective Date by any Retained Professional in the Chapter 11 Cases, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (b) after applying any retainer that has been provided to such Retained Professional. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Retained Professional's fees or expenses, then those reduced or denied amounts shall no longer

constitute Accrued Professional Compensation.  For the avoidance of doubt, Accrued Professional Compensation includes unbilled fees and expenses incurred on account of services provided by Retained Professionals that have not yet been submitted for payment, except to the extent that such fees and expenses are either denied or reduced by a Final Order by the Bankruptcy Court or any higher court of competent jurisdiction.

7.    "<u>Administrative Claim</u>" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code other than a Professional Fee Claim, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; and (b) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

8.    "<u>Administrative Claims Bar Date</u>" means the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

9.    "<u>Affiliate</u>" has the meaning set forth at section 101(2) of the Bankruptcy Code.

10.    "<u>Allowed</u>" means, with respect to Claims: (a) any Claim, proof of which is timely filed by the applicable Claims Bar Date or which, pursuant to the Bankruptcy Code or a Final Order is not required to be filed; (b) any Claim that is listed in the Schedules as of the Effective Date as neither contingent, unliquidated, nor disputed, and for which no Proof of Claim has been timely filed; or (c) any Claim Allowed pursuant to the Plan; *provided*, *however*, that with respect to any Claim described in clause (a) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim shall have been Allowed for distribution purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtors or the Reorganized Debtors and without any further notice to or action, order or approval of the Bankruptcy Court.

11.    "<u>Avoidance Actions</u>" means any and all claims and causes of action which any of the Debtors, the debtors in possession, the Estates, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

12.    "<u>Backstop Lenders</u>" means those certain Prepetition First Lien Lenders who executed the Restructuring Support Agreement and, pursuant to the terms thereof, shall backstop the Term DIP Commitments, as defined therein.

13.    "<u>Ballots</u>" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their

3

acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

14.   "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended.

15.   "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Eastern District of Missouri.

16.   "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local and chambers rules of the Bankruptcy Court.

17.   "<u>Business Day</u>" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.   "<u>Canadian Debtors</u>" means, collectively Payless ShoeSource Canada Inc., Payless ShoeSource Canada GP Inc., and Payless ShoeSource Canada LP.

19.   "<u>Canadian General Unsecured Claim</u>" means an unsecured, non-priority claim at any of the Canadian Debtors.

20.   "<u>Cash</u>" means the legal tender of the United States of America or the equivalent thereof.

21.   "<u>Cash Incentive Program</u>" means that certain cash incentive program for employees, the terms of which are set forth in the term sheet attached as Exhibit H to the Disclosure Statement and the form agreement of which will be set forth in the Plan Supplement.

22.   "<u>Causes of Action</u>" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Causes of Action" includes:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

23.   "<u>Chapter 11 Cases</u>" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor under chapter 11 of the Bankruptcy Code in the

4

Bankruptcy Court and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

24.     "Claim" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

25.     "Claims Bar Date" means, as applicable, (a) 11:59 p.m. prevailing Central Time on June 19, 2017, (b) the Governmental Bar Date, or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing such Claims, pursuant to the Claims Bar Date Order.

26.     "Claims Bar Date Order" means that certain *Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* entered by the Bankruptcy Court on May 16, 2017 [Docket No. 767], as may be amended from time to time.

27.     "Claims Objection Bar Date" means, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims, as the same may be modified or extended from time to time by the Bankruptcy Court or on motion of a party in interest approved by the Bankruptcy Court.

28.     "Claims Register" means the official register of Claims maintained by the Clerk of the Court for the United States Bankruptcy Court for the Eastern District of Missouri.

29.     "Class" means a category of Holders of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

30.     "Commission" or "SEC" means the United States Securities and Exchange Commission.

31.     "Compensation and Benefits Programs" means all employment and severance policies, and all compensation and benefit plans, policies, and programs and other arrangements (and all amendments and modifications thereto), in each case in place as of the Effective Date, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and employees, former employees, and retirees of their subsidiaries, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, and life, accidental death, and dismemberment insurance plans.

32.     "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article VIII.A of the Plan having been: (a) satisfied; or (b) waived pursuant to Article VIII.C of the Plan.

33.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

34. "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

35. "Confirmation Order" means the order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

36. "Consenting Lenders" has the meaning ascribed to such term in the Restructuring Support Agreement.

37. "Consummation" means the occurrence of the Effective Date.

38. "Creditors' Committee" means the official committee of unsecured creditors of the Debtors appointed by the Office of the United States Trustee for the Eastern District of Missouri in the Chapter 11 Cases on April 14, 2017, pursuant to section 1102 of the Bankruptcy Code, comprising the Creditors' Committee Members, as may be reconstituted from time to time.

39. "Creditors' Committee Members" means the members of the Creditors' Committee, as may be reconstituted from time to time, in each case, solely in their respective capacities as such, namely:  (a) Moda Shoe, Ltd.; (b) GGP Limited Partnership; (c) Qingdao Doublestar Mingren Imp. And Exp. Co.; (d) C and C Accord, LTD.; (e) Simon Property Group, Inc.; (f) The Asean Corporation, Ltd.; and (g) Brixmore Property Group, Inc.

40. "Cure" means the payment of Cash by the applicable Debtors, or the distribution of other property (as the applicable Debtors and the counterparty to the Executory Contract or Unexpired Lease may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtors and (b) permit the Debtors to assume such Executory Contract or Unexpired Lease under sections 365 and 1123 of the Bankruptcy Code.

41. "Cure Claim" means a monetary Claim based upon the Debtors' defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

42. "Cure Notice" means a notice of a proposed amount of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases, (b) Cure Claims to be paid in connection therewith, and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

43. "Debtor" means one of the Debtors, in its individual capacity as a debtor in these Chapter 11 Cases.

44. "Debtors in Possession" means, collectively, the Debtors, as debtors in possession in these Chapter 11 Cases.

6

45.    "<u>Definitive Documents</u>" means all documents (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by the Plan and that are otherwise necessary or desirable to implement, effectuate, or otherwise relate to the restructuring contemplated by the Plan, and which shall be in form and substance reasonably acceptable to the Requisite Consenting Lenders, including, without limitation: (a) the Plan, (b) the Plan Supplement, (c) the Disclosure Statement, (d) the motion seeking approval of the Disclosure Statement and the Disclosure Statement Order, (e) the Confirmation Order, (f) any documentation relating to the use of cash collateral and the DIP Facilities, including orders of the Bankruptcy Court related thereto, (g) the New Credit Facilities Documents, (h) the New Organizational Documents, and (i) the Shareholders Agreement.

46.    "<u>Definitive Document Restructuring Support Agreement Requirements</u>" means that the Definitive Documents shall (a) contain terms and conditions consistent in all material respects with the Restructuring Support Agreement, the Restructuring Term Sheet, and the DIP Documents and (b) shall otherwise be reasonably satisfactory in all respects to the Debtors and the Requisite Consenting Lenders, including with respect to any modifications, amendments, deletions, or supplements to such Definitive Documents.

47.    "<u>DIP Agents</u>" means the ABL DIP Agents and the Term DIP Agent, collectively.

48.    "<u>DIP Documents</u>" means, collectively, the ABL DIP Credit Agreement, the Term DIP Credit Agreement, and any documents related thereto.

49.    "<u>DIP Facilities</u>" means, collectively, the ABL DIP Facility and the Term DIP Facility.

50.    "<u>DIP Facility Claims</u>" means, collectively, any ABL DIP Claims or Term DIP Facility Claims.

51.    "<u>DIP Lenders</u>" means the banks, financial institutions, and other lenders under the DIP Facilities.

52.    "<u>Disclosure Statement</u>" means the *Disclosure Statement for the Joint Plan of Reorganization of Payless Holdings LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules, and any other applicable law.

53.    "<u>Disclosure Statement Order</u>" means the order of the Bankruptcy Court approving the Disclosure Statement.

54.    "<u>Disputed</u>" means, with respect to any Claim, any Claim that is not yet Allowed.

55.    "<u>Distribution Agent</u>" means any Entity or Entities chosen by the Debtors, which Entities may include, without limitation, the Noticing and Claims Agent, to make or to facilitate distributions required by the Plan.

7

56. "<u>Distribution Record Date</u>" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

57. "<u>D&O Liability Insurance Policies</u>" means all insurance policies for current and former director and officer liability maintained by the Debtors as of the date of the Restructuring Support Agreement.

58. "<u>Effective Date</u>" means the day that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.B of the Plan have been: (i) satisfied; or (ii) waived pursuant to Article VIII.C of the Plan.

59. "<u>Entity</u>" has the meaning set forth in section 101(15) of the Bankruptcy Code.

60. "<u>Equity Interest</u>" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interest of any Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement), including any claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing; *provided*, *however*, that Equity Interest does not include any Intercompany Interest.

61. "<u>Estate</u>" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

62. "<u>Exculpated Parties</u>" means, collectively, the Reorganized Debtors, the Released Parties, the Creditors' Committee, and the Creditors' Committee Members.

63. "<u>Exculpation</u>" means the exculpation provision set forth in Article IX.G of the Plan.

64. "<u>Executory Contract</u>" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

65. "<u>Existing Equity Interests</u>" means the Equity Interests in Payless Holdings LLC.

66. "<u>Exit Commitment Fee</u>" means New Equity of a value equal to 2.5% of the amount of the Allowed Term DIP Facility Claims as of the Effective Date.

67. "<u>Federal Judgment Rate</u>" means the federal judgment rate in effect as of the Petition Date, compounded annually.

68. "<u>Final DIP Order</u>" means that certain *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) ranting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate*

8

*Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief,* entered by the Bankruptcy Court on May 17, 2017 [Docket No. 778], as may be amended from time to time in accordance with the terms thereof and the DIP Documents.

69.    "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing being timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

70.    "<u>General Unsecured Claims</u>" means any other Claims against any Debtor that are not otherwise paid in full during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court and are not: (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an ABL DIP Claim; (d) a Term DIP Facility Claim; (e) an Other Priority Claim; (f) an Other Secured Claim; (g) a Prepetition First Lien Credit Agreement Claim; (h) a Prepetition Second Lien Credit Agreement Claim; (i) an Intercompany Claim; or (j) a Section 510(b) Claim; *provided*, *however*, that, for the avoidance of doubt, Prepetition First Lien Deficiency Claims and Prepetition Second Lien Credit Agreement Claims shall <u>not</u> constitute General Unsecured Claims at any applicable Debtor.

71.    "<u>Governmental Bar Date</u>" means 11:59 p.m. prevailing Central Time on October 2, 2017, or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court.

72.    "<u>Governmental Unit</u>" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

73.    "<u>Holder</u>" means an Entity holding a Claim against or an Interest in any of the Debtors.

74.    "<u>Impaired</u>" means any impaired Claim or Interest in an Impaired Class within the meaning of section 1124 of the Bankruptcy Code.

75.    "<u>Impaired Class</u>" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

76.    "<u>Indemnification Obligation</u>" means a Debtor's obligation under an Executory Contract assumed in the Chapter 11 Cases or otherwise to indemnify directors, officers, employees, or agents of such Debtor who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of

9

any Debtor, pursuant to and to the maximum extent provided by such Debtor's respective certificate of incorporations, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.

77.    "Initial Distribution Date" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when distributions under the Plan shall commence.

78.    "Insurance Policies" means all insurance policies that have been issued at any time to or that provide coverage to any of the Debtors (excluding any D&O Liability Insurance Policies) and all agreements, documents, or instruments related thereto.

79.    "Intercompany Claim" means, collectively, any Claim held by a Debtor against another Debtor or an Affiliate of a Debtor or any Claim held by an Affiliate of a Debtor against a Debtor.

80.    "Intercompany Interest" means an Equity Interest in a Debtor held by another Debtor.

81.    "Interest" means, collectively, Equity Interests and Intercompany Interests.

82.    "Interim Compensation Order" means that certain *Order (I) Pursuant to Section 330 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Rules 2016-1 and 2016-2, Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals and (II) Granting Related Relief*, entered by the Bankruptcy Court on May 17, 2017 [Docket No. 784], as may be amended from time to time, including by an order entered by the Bankruptcy Court approving the retention of a specific Retained Professional.

83.    "Letters of Credit" means the letters of credit referenced in paragraph G(ii) of the Final DIP Order.

84.    "Local Bankruptcy Rules" means the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri.

85.    "Management Equity Incentive Plan" means that certain post-Effective Date director and employee compensation program to be approved and implemented by the New Board as set forth in Article IV.S hereof.

86.    "MSCS Swap Claim" means any Claim arising from or related to that certain ISDA Master Agreement dated as of October 2, 2013, by and between Morgan Stanley Capital Services LLC and Payless Inc., as supplemented by those three certain Confirmations thereunder, dated as of April 4, 2014.

87.    "New ABL Credit Agreement" means that certain credit agreement related to the New ABL Facility, the form of which shall be included in the Plan Supplement.

88.    "New ABL Facility" means up to a $305 million senior secured asset-based revolving credit facility.

10

89. "<u>New ABL Facility Documents</u>" means, in connection with the New ABL Facility, the New ABL Credit Agreement and other loan documents related to or evidencing the loans and obligations thereunder.

90. "<u>New Board</u>" means the initial board of directors of Reorganized Holdings, which board of directors shall be selected by the Requisite Consenting Lenders and disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code.

91. "<u>New Credit Facilities</u>" means, collectively, the New ABL Facility and the New First Lien Term Loan Facility.

92. "<u>New Credit Facilities Documents</u>" means, collectively, the New ABL Facility Documents and the New First Lien Term Loan Facility Documents.

93. "<u>New Equity</u>" means the common equity in Reorganized Holdings to be authorized, issued, or reserved on the Effective Date pursuant to the Plan, which shall constitute all of the direct or indirect common equity of Reorganized Holdings.

94. "<u>New First Lien Term Loan A-1 Tranche</u>" means the first-out amortizing tranche of the New First Lien Term Loan Facility, which term loan shall be in an amount equal to the outstanding balance of the Term DIP Facility on the Effective Date.

95. "<u>New First Lien Term Loan A-2 Tranche</u>" means a last-out amortizing term loan tranche of the New First Lien Term Loan Facility, which term loan shall be in an amount of $280 million less the amount of the outstanding balance of the Term DIP Facility on the Effective Date.

96. "<u>New First Lien Term Loan Credit Agreement</u>" means that certain credit agreement related to the New First Lien Term Loan Facility.  The New First Lien Term Loan Credit Agreement will be included in the Plan Supplement.

97. "<u>New First Lien Term Loan Facility</u>" means a $280 million first lien senior secured term loan facility, composed of (i) the New First Lien Term Loan A-1 Tranche and (ii) the New First Lien Term Loan A-2 Tranche, the material terms of which are set forth in **Exhibit B** to the Restructuring Term Sheet and the forms of which shall be included in the Plan Supplement.

98. "<u>New First Lien Term Loan Facility Documents</u>" means, in connection with the New First Lien Term Loan Facility, the New First Lien Term Loan Credit Agreement and other loan documents related to or evidencing the loans and obligations thereunder.

99. "<u>New Organizational Documents</u>" means the forms of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of each of the Reorganized Debtors, which forms shall be included in the Plan Supplement.

100. "<u>Noticing and Claims Agent</u>" means Prime Clerk LLC, in its capacity as notice and claims agent for the Debtors, pursuant to that certain *Order (I) Authorizing and Approving the Appointment of Prime Clerk LLC as Notice and Claims Agent Nunc Pro Tunc to the Petition*

11

*Date and (II) Granting Related Relief*, entered by the Bankruptcy Court on April 14, 2017 [Docket No. 237], as may be amended from time to time.

101.    "Other General Unsecured Claim" means any unsecured, non-priority Claim against one or more of the Debtors (other than a Worldwide General Unsecured Claim or a Canadian General Unsecured Claim); *provided*, *however*, that, for the avoidance of doubt, Prepetition First Lien Deficiency Claims and Prepetition Second Lien Credit Agreement Claims shall not constitute Other General Unsecured Claims hereunder.

102.    "Other General Unsecured Claims Recovery Pool" means (a) in the event that Class 5A votes to accept the Plan, $1,000,000 in Cash, or (b) in the event that Class 5A votes to reject the Plan, $250,000 in Cash.

103.    "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

104.    "Other Secured Claim" means any secured Claim against the Debtors not specifically described in the Plan.

105.    "Periodic Distribution Date" means the first day of the month immediately following the month in which a Claim becomes Allowed, when distributions shall be made to Holders of any such then-Allowed Claims.

106.    "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

107.    "Petition Date" means April 4, 2017, the date on which the Debtors commenced the Chapter 11 Cases.

108.    "Plan" means the *Joint Plan of Reorganization of Payless Holdings LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* dated April 25, 2017, as amended, supplemented, or modified from time to time in accordance with its terms, including, without limitation, by the Plan Supplement, which is incorporated in the Plan by reference, subject to the terms of the Restructuring Support Agreement.

109.    "Plan Supplement" means the compilation of documents and forms of documents, schedules and exhibits, in each case, in a form reasonably satisfactory to the Requisite Consenting Lenders and the ABL Lenders, to be filed on the Plan Supplement Filing Date, as amended, modified or supplemented from time to time in accordance with the terms of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, comprising, without limitation, the following documents: (a) the Shareholders Agreement; (b) the New First Lien Credit Agreement; (c) the New ABL Credit Agreement; (d) the Schedule of Assumed Executory Contracts and Unexpired Leases; (e) the Schedule of Rejected Executory Contracts and Unexpired Leases; (f) a list of retained Causes of Action; (g) the New Organizational Documents; and (h) the documents and agreements necessary to implement the Cash Incentive Program.

110. "<u>Plan Supplement Filing Date</u>" means the date that is seven (7) calendar days prior to the Voting Deadline.

111. "<u>Prepetition ABL Credit Agreement</u>" means that certain credit agreement, dated as of October 9, 2012 (as amended, restated, modified, or supplemented from time to time prior to the date of the Restructuring Support Agreement), among certain of the Debtors, the Prepetition ABL Facility Lenders, the Prepetition ABL Facility Agent, and the other parties thereto.

112. "<u>Prepetition ABL Facility Agents</u>" means Wells Fargo Bank, National Association, in its capacity as administrative and collateral agent with respect to the Prepetition ABL Credit Agreement, and TPG Specialty Lending, Inc., in its capacity as tranche A-1 agent with respect to the Prepetition ABL Credit Agreement.

113. "<u>Prepetition ABL Facility Lenders</u>" means those lenders party to the Prepetition ABL Credit Agreement from time to time.

114. "<u>Prepetition Agents</u>" means, collectively, the Prepetition ABL Facility Agents, the Prepetition First Lien Agent, and the Prepetition Second Lien Agent.

115. "<u>Prepetition Credit Agreements</u>" means, collectively, the Prepetition First Lien Credit Agreement, the Prepetition Second Lien Credit Agreement, and the Prepetition ABL Credit Agreement.

116. "<u>Prepetition Credit Agreement Claims</u>" means, collectively, the Prepetition First Lien Credit Agreement Claims and the Prepetition Second Lien Credit Agreement Claims.

117. "<u>Prepetition First Lien Agent</u>" means Cortland Products Corp., in its capacity as administrative and collateral agent with respect to the Prepetition First Lien Credit Agreement (as successor to Morgan Stanley Senior Funding, Inc. in such capacity).

118. "<u>Prepetition First Lien Credit Agreement</u>" means that certain First Lien Term Loan and Guarantee Agreement, dated as of March 11, 2014 (as amended, restated, modified, or supplemented from time to time prior to the date of the Restructuring Support Agreement), among certain of the Debtors, the Prepetition First Lien Lenders, and Cortland Products Corp., in its capacity as administrative agent and collateral agent thereunder.

119. "<u>Prepetition First Lien Credit Agreement Claims</u>" means all claims arising under or in connection with the Prepetition First Lien Credit Agreement and any related documents, including any MSCS Swap Claim.

120. "<u>Prepetition First Lien Deficiency Claims</u>" means the portion of the Prepetition First Lien Credit Agreement Claims constituting unsecured Claims under section 506(a) of the Bankruptcy Code.

121. "<u>Prepetition First Lien Lenders</u>" means those lenders party to the Prepetition First Lien Credit Agreement from time to time.

122. "Prepetition Lenders" means, collectively, the Prepetition First Lien Lenders and the Prepetition Second Lien Lenders.

123. "Prepetition Second Lien Agent" means Wilmington Savings Fund Society, FSB, in its capacity as administrative and collateral agent with respect to the Prepetition Second Lien Credit Agreement (as successor to Morgan Stanley Senior Funding, Inc. in such capacity).

124. "Prepetition Second Lien Credit Agreement" means that certain Second Lien Term Loan and Guarantee Agreement, dated as of March 11, 2014 (as amended, restated, modified or supplemented from time to time prior to the date of the Restructuring Support Agreement), among certain of the Debtors, the Prepetition Second Lien Lenders, and Morgan Stanley Senior Funding, Inc., in its capacity as administrative agent and collateral agent thereunder.

125. "Prepetition Second Lien Credit Agreement Claims" means all claims arising under or in connection with the Prepetition Second Lien Credit Agreement and any related documents.

126. "Prepetition Second Lien Lenders" means those lenders party to the Prepetition Second Lien Credit Agreement from time to time.

127. "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

128. "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

129. "Professional Fee Claim" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 363, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

130. "Professional Fee Escrow Account" means an interest-bearing escrow account in an amount equal to the Professional Fee Reserve Amount funded and maintained by the Reorganized Debtors on and after the Effective Date solely for the purpose of paying all Allowed and unpaid fees and expenses of Retained Professionals in the Chapter 11 Cases.

131. "Professional Fee Reserve Amount" means the aggregate Accrued Professional Compensation through the Effective Date as estimated by the Retained Professionals in accordance with Article II.C.3 hereof.

132. "Proof of Claim" means a proof of claim filed against any of the Debtors in the Chapter 11 Cases.

133. "Qualified Trade Agreement" means an agreement by a Holder of a General Unsecured Claim that directly relates to and arises solely from the receipt of goods and services

14

by the Debtors to provide favorable vendor terms for at least 12 months following the Effective Date, which agreement shall be reasonably acceptable to the Requisite Consenting Lenders.

134.    "Qualified Vendor" means a vendor that has executed a Qualified Trade Agreement with the Debtors.

135.    "Record Date" means 5:00 p.m. prevailing Central Time on June 14, 2017.

136.    "Reinstated" or "Reinstatement" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

137.    "Released Parties" means, collectively, (a) each Debtor and Reorganized Debtor; (b) the Debtors' current and former officers and directors; (c) the Prepetition Agents; (d) the Prepetition Lenders; (e) the Prepetition ABL Facility Lenders; (f) the DIP Agents; (g) the DIP Lenders; (h) the Sponsors; (i) the parties to the Restructuring Support Agreement; and (j) with respect to each of the foregoing entities in clauses (a) through (i), such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such entities' respective heirs, executors, estates, servants and nominees, in each case, solely in their capacity as such.

138.    "Releasing Parties" means, collectively, (a) the Debtors (subject to a determination by the Board of Directors following an investigation that such Release is appropriate); (b) the Consenting Lenders; (c) the Prepetition Agents; (d) the DIP Lenders; (e) the DIP Agents; (f) the Sponsors; (g) all Holders of Claims and Interests that are deemed unimpaired and presumed to accept the Plan; (h) all Holders of Claims who either (1) vote to accept or (2) receive a Ballot providing them the right to opt out of any applicable releases but abstain from voting on the Plan or otherwise do not elect pursuant to such Ballot to opt out of the Third-Party Release; (i) all Holders of Claims and Interests who are not entitled to vote on the Plan but receive a notice advising them of their ability to opt out of the Third-Party Release but who do not elect to opt out of the Third-Party Release; (j) all Holders of Claims entitled to vote who vote to reject the Plan and do not elect on their Ballot to opt out of the Third-Party Release; (k) all other Holders of Claims and Interests to the extent permitted by law; and (l) with respect to the Debtors, the Reorganized Debtors, and each of the foregoing Entities in clauses (a) through (k), each such Entity's current and former Affiliates, and each such Entity's and their current and former Affiliates' current and former directors, managers, officers, principals, members, employees, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

139.    "Reorganized Debtors" means the Debtors, in each case, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

140.    "Reorganized Holdings" means Payless Holdings LLC, as reorganized pursuant to and under the Plan, or a new corporation or limited liability company that may be formed to

15

directly or indirectly acquire all of the assets and/or stock of the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

141.  "Requisite Consenting Lenders" means, as of the relevant date, Consenting Lenders that collectively hold at least a majority of the aggregate outstanding principal amount of Prepetition First Lien Credit Agreement Claims held by all of the Consenting Lenders as of such date and are party to the Restructuring Support Agreement.

142.  "Restructuring Support Agreement" means that certain restructuring support agreement, dated as of April 4, 2017, among certain of the Debtors and the Consenting Lenders, as amended, supplemented, or otherwise modified from time to time subject to the terms thereof.

143.  "Restructuring Term Sheet" means the term sheet annexed as Exhibit A to the Restructuring Support Agreement.

144.  "Retained Professional" means any Entity: (a) employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

145.  "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule, in form and substance reasonably acceptable to the Debtors and the Requisite Consenting Lenders (including any amendments or modifications thereto), if any, of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time prior to the Confirmation Date.

146.  "Schedule of Rejected Executory Contracts and Unexpired Leases" means the schedule, in form and substance reasonably acceptable to the Debtors and the Requisite Consenting Lenders (including any amendments or modification thereto), if any, of certain Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time prior to the Confirmation Date.

147.  "Scheduled Undisputed Claim" means a Claim listed on the Schedules that is not marked thereon as "disputed," "unliquidated," or "contingent."

148.  "Schedules" mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors on May 10, 2017, pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

149.  "Section 510(b) Claim" means any Claim against the Debtors arising from the rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, for

16

damages arising from the purchase or sale of such a security or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

150. "Secured" means, when referring to a Claim, a Claim:  (a) secured by a lien on property in which the applicable Estate has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

151. "Securities Act" means the United States Securities Act of 1933, as amended.

152. "Shareholders Agreement" means the stockholders' agreement with respect to the New Equity, the form of which shall be set forth in the Plan Supplement.

153. "Sponsors" means, collectively, Golden Gate Capital Inc. and Blum Capital Partners (including each such Entity's current and former Affiliates who own any equity in the Debtors).

154. "Term DIP Agent" means Cortland Products Corp., in its capacity as administrative agent and collateral agent pursuant to the Term DIP Facility.

155. "Term DIP Credit Agreement" means that certain debtor-in-possession term loan and guarantee agreement, dated April 5, 2017, by and among: (a) certain of the Debtors, (b) the Term DIP Agent, and (c) the Term DIP Lenders (as may be amended, restated, supplemented, or otherwise modified from time to time).

156. "Term DIP Facility" means that certain postpetition debtor-in-possession financing facility, comprised of an up to $80 million secured superpriority term loan pursuant to the terms and conditions of the Term DIP Credit Agreement.

157. "Term DIP Lenders" means the several lenders from time to time party to the Term DIP Credit Agreement.

158. "Term DIP Facility Claims" means any claims arising from the Debtors' Term DIP Facility, including any accrued but unpaid interest and fees due and owing under the DIP Facilities as of the Effective Date pursuant to the terms of the DIP Documents, the Final DIP Order, and/or any related documents.

159. "Third-Party Release" means the releases set forth in Article IX.F.

160. "Tranche A-1 Agent" means TPG Specialty Lending, Inc., in its capacity as tranche A-1 agent pursuant to the ABL DIP Facility.

161. "Unencumbered Property" means all present and after acquired property of the Debtors, wherever located, not subject to a lien or security interest on the Petition Date.

162. "<u>Unexpired Lease</u>" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

163. "<u>Unimpaired</u>" means any unimpaired Claim or Interest in an Unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

164. "<u>Unimpaired Class</u>" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

165. "<u>United States Trustee</u>" means the United States Trustee for the Eastern District of Missouri.

166. "<u>Voting Classes</u>" means, collectively, Classes 3, 4, 5A, and 5B.

167. "<u>Voting Deadline</u>" means 4:00 p.m. prevailing Central Time on July 17, 2017.

168. "<u>Worldwide General Unsecured Claim</u>" means any General Unsecured Claim against Payless ShoeSource Worldwide, Inc.

169. "<u>Worldwide GUC Cash-Out Election</u>" means an election by a Holder of a Worldwide General Unsecured Claim on such Holder's Ballot to receive a Worldwide GUC Cash-Out Option Payment instead of its Pro Rata share of the Worldwide New Equity Recovery pursuant to Article IV.I of the Plan.

170. "<u>Worldwide GUC Cash-Out Option Payment</u>" means, taking into account each Holder of Worldwide General Unsecured Claims that makes the Worldwide GUC Cash-Out Election, a Cash payment no less than the lesser of (a) 50% of the value of the Worldwide New Equity Recovery such Holder would otherwise have been entitled to receive had it not made such Worldwide GUC Cash-Out Election and (b) such Holder's Pro Rata share of the Worldwide GUC Cash-Out Cap.

171. "<u>Worldwide GUC Cash-Out Cap</u>" means $3.66 million (which amount is the total amount of Cash that would be paid assuming all Holders of the estimated Worldwide General Unsecured Claims, as estimated in the Disclosure Statement, make the Worldwide GUC Cash-Out Election).

172. "<u>Worldwide New Equity Recovery</u>" means 2.9% of the New Equity (subject to dilution from the Management Equity Incentive Plan and the Exit Commitment Fee) to be provided to Allowed Holders of Worldwide General Unsecured Claims.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, ABL DIP CLAIMS, TERM DIP FACILITY CLAIMS, AND UNITED STATES TRUSTEE STATUTORY FEE

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, ABL DIP Claims, and Term DIP Facility Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article III.

18

A.     *Administrative Claims*

Except with respect to Administrative Claims that are Professional Fee Claims and ABL DIP Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the unpaid portion of its Allowed Administrative Claim on the latest of:   (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order.   Notwithstanding any provision of the Plan to the contrary, no Governmental Unit shall be required to file a request for the payment of an expense described in 11 U.S.C. § 503(b)(1)(B) or (C) as a condition of it being allowed as an administrative expense.

B.     *Administrative Claims Bar Date*

All requests for payment of an Administrative Claim (other than Prepetition Credit Agreement Claims or Professional Fee Claims) that accrued on or before the Effective Date that were not accrued in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than the Administrative Claims Bar Date.   Holders of Administrative Claims that are, based on the preceding sentence, required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.

The Reorganized Debtors, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.   The Debtors may also choose to object to any Administrative Claim no later than 60 days from the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or the Reorganized Debtors (or other party with standing) object to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed allowed in the amount requested.  In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

C.      *Professional Compensation*

      1.      <u>Final Fee Applications</u>

      All final requests for Professional Fee Claims shall be filed no later than 30 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

      2.      <u>Professional Fee Escrow Account</u>

      On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Retained Professionals.  The Professional Fee Escrow Account shall be maintained in trust solely for the Retained Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.  The amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order.  When all such Allowed amounts owing to Retained Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

      3.      <u>Professional Fee Reserve Amount</u>

      To receive payment for unbilled fees and expenses incurred through the Effective Date, the Retained Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors on or before the Effective Date.  If a Retained Professional does not provide such estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Retained Professional; *provided* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Retained Professional.  The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

      4.      <u>Post-Confirmation Date Fees and Expenses</u>

      Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, each Debtor and Reorganized Debtor (as applicable) shall pay in Cash the reasonable legal fees and expenses incurred by such Debtor or Reorganized Debtor (as applicable) after the Confirmation Date in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.  The Debtors and Reorganized Debtors (as applicable) shall pay, within ten Business Days after submission of a detailed invoice to the Debtors or Reorganized Debtors (as applicable), such reasonable claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Debtors and Reorganized Debtors (as applicable).  If the Debtors or Reorganized Debtors (as applicable), dispute the reasonableness of any such invoice, the Debtors or Reorganized Debtors (as applicable) or the affected professional may submit such dispute to the Bankruptcy Court for

20

a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein. Upon the Confirmation Date, any requirement that Retained Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Debtor or Reorganized Debtor (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

        5.     <u>Substantial Contribution Compensation and Expenses</u>

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must file an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules on or before the Administrative Claims Bar Date.

D.     *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.     *ABL DIP Claims*

On the Effective Date, except to the extent that a Holder of an Allowed ABL DIP Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed ABL DIP Claim, each Holder of an Allowed ABL DIP Claim shall indefeasibly receive payment in full, in Cash.

F.     *Term DIP Facility Claims*

On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Term DIP Facility Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Term DIP Facility Claim, each such Holder of an Allowed Term DIP Facility Claim shall receive, on a dollar-for-dollar-basis, its Pro Rata share of the New First Lien Term Loan A-1 Tranche.

G.     *United States Trustee Statutory Fees*

The Debtors shall pay all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors'

businesses, until the entry of a Final Order, dismissal of the Chapter 11 Cases, or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

*A.    Summary*

This Plan constitutes a separate chapter 11 plan of reorganization for each Debtor. Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, ABL DIP Claims, and Term DIP Facility Claims as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including, without limitation, voting, Confirmation, and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

1.    Summary of Classification and Treatment of Classified Claims and Interests

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition First Lien Credit Agreement Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Second Lien Credit Agreement Claims | Impaired | Entitled to Vote |
| 5A | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 5B | Worldwide General Unsecured Claims | Impaired | Entitled to Vote |
| 5C | Canadian General Unsecured Claims | Unimpaired | Deemed to Accept |
| 6 | Intercompany Claims | Unimpaired/ Impaired | Deemed to Accept/Deemed to Reject |

22

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 7 | Existing Equity Interests[3] | Impaired | Deemed to Reject |
| 8 | Intercompany Interests | Unimpaired | Deemed to Accept |
| 9 | Section 510(b) Claims | Impaired | Deemed to Reject |

B.    *Classification and Treatment of Claims and Interests*

1.  Class 1 – Other Priority Claims

    (a)  *Classification*:  Class 1 consists of Other Priority Claims against the Debtors.

    (b)  *Treatment*:  On the Effective Date or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Other Priority Claim has already been paid during the Chapter 11 Cases or such Holder of an Allowed Other Priority Claim, together with the Debtors and the Requisite Consenting Lenders, agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim.

    (c)  *Voting*:  Unimpaired.  Each Holder of an Allowed Other Priority Claim will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Other Priority Claim will not be entitled to vote to accept or reject the Plan.

2.  Class 2 – Other Secured Claims

    (a)  *Classification*:  Class 2 consists of Other Secured Claims against the Debtors.

    (b)  *Treatment*:  On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Secured Claim has already been paid during the Chapter 11 Cases or such Holder, together with the Debtors and the Requisite Consenting Lenders, agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive: (i) payment

---

[3]    Following the Petition Date, the Debtors received a letter from certain Holders of Existing Equity Interests in Payless Holdings LLC asserting entitlement to certain assets of Payless Holdings LLC with an approximate value of $5 million.  These Holders have requested that such value be preserved for distributions to Holders of Existing Equity Interests.  The Debtors are evaluating the assets and liabilities at each Debtor and reserve all rights related thereto, including the right to modify the proposed treatment of Claims in Class 7 under the Plan as a result of such evaluation.

in full, in Cash, of the unpaid portion of its Allowed Other Secured Claim; (ii) delivery of the collateral securing such Allowed Other Secured Claim; or (iii) other treatment, as decided by the Debtors and the Requisite Consenting Lenders to their mutual satisfaction, such that the Other Secured Claim shall be rendered unimpaired.

(c)     *Voting*: Unimpaired.  Each Holder of an Allowed Other Secured Claim will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of an Allowed Other Secured Claim will not be entitled to vote to accept or reject the Plan.

3.     Class 3 – Prepetition First Lien Credit Agreement Claims

(a)     *Classification*:  Class 3 consists of Prepetition First Lien Credit Agreement Claims against the Debtors.

(b)     *Allowance*:  The Prepetition First Lien Credit Agreement Claims shall be allowed in the aggregate amount of $506.3 million (including $633,433.66 (plus accrued and unpaid interest and any reasonable, actual, and documented fees) on account of the Allowed MSCS Swap Claim).

(c)     *Treatment*:  On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Prepetition First Lien Credit Agreement Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Prepetition First Lien Credit Agreement Claim, each Holder of an Allowed Prepetition First Lien Credit Agreement Claim shall receive its Pro Rata share of: (i) the New First Lien Term Loan A-2 Tranche; and (ii) 91.0% of the New Equity, subject to reduction on account of the Worldwide New Equity Recovery and subject to dilution from the Management Equity Incentive Plan and the Exit Commitment Fee.

(d)     *Voting*:  Impaired.  Each Holder of an Allowed Prepetition First Lien Credit Agreement Claim will be entitled to vote to accept or reject the Plan.

4.     Class 4 – Prepetition Second Lien Credit Agreement Claims

(a)     *Classification*:    Class 4 consists of Prepetition Second Lien Credit Agreement Claims against the Debtors.

(b)     *Allowance*:  The Prepetition Second Lien Credit Agreement Claims shall be allowed in the aggregate amount of $145 million.

24

(c) *Treatment*:  Except to the extent that a Holder of an Allowed Prepetition Second Lien Credit Agreement Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Prepetition Second Lien Credit Agreement Claim (including the unsecured deficiency claim of its Prepetition Second Lien Credit Agreement Claim), each Holder of an Allowed Prepetition Second Lien Credit Agreement Claim shall receive its Pro Rata share of 9.0% of the New Equity, subject to dilution from the Management Equity Incentive Plan and the Exit Commitment Fee.

(d) *Voting*:  Impaired.  Each Holder of an Allowed Prepetition Second Lien Credit Agreement Claim will be entitled to vote to accept or reject the Plan.

5. Class 5A – Other General Unsecured Claims

(a) *Classification*:  Class 5A consists of Other General Unsecured Claims against the Debtors.

(b) *Treatment*:  Except to the extent that a Holder of an Allowed Other General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of an in exchange for its Allowed Other General Unsecured Claim, each Holder of an Allowed Other General Unsecured Claim shall receive its Pro Rata share of the Other General Unsecured Claims Recovery Pool.

(c) *Voting*:  Impaired.  Each Holder of an Allowed Other General Unsecured Claim will be entitled to vote to accept or reject the Plan.

6. Class 5B – Worldwide General Unsecured Claims

(a) *Classification*:  Class 5B consists of Worldwide General Unsecured Claims against Debtor Payless ShoeSource Worldwide, Inc.

(b) *Treatment*:  Except to the extent that a Holder of an Allowed Worldwide General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Allowed Worldwide General Unsecured Claim, each Holder of an Allowed Worldwide General Unsecured Claim shall receive:

(i) if such Holder has not made the Worldwide GUC Cash-Out Election, such Holder's Pro Rata share of the Worldwide New Equity Recovery; or

(ii) if such Holder has made the Worldwide GUC Cash-Out Election, such Holder's Worldwide GUC Cash-Out Option Payment (in which case the Holder's Pro Rata share of the Worldwide New

25

Equity Recovery to which it would have been entitled shall be removed from the Worldwide New Equity Recovery and not issued).

(c) *Voting*:  Impaired.  Each Holder of an Allowed Worldwide General Unsecured Claim will be entitled to vote to accept or reject the Plan.

7.  Class 5C – Canadian General Unsecured Claims

(a) *Classification*:  Class 5C consists of Canadian General Unsecured Claims against the Canadian Debtors.

(b) *Treatment*:  On the Effective Date or as soon as reasonably practicable thereafter, except to the extent a Holder of a Canadian General Unsecured Claim has already been paid during the Chapter 11 Cases or a Holder of a Canadian General Unsecured Claim, together with the Debtors and the Requisite Consenting Lenders, agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for its Canadian General Unsecured Claim, each Holder of a Canadian General Unsecured Claim shall have its Claim Reinstated; *provided,* however*,* that nothing in this Plan shall affect any of the Debtors' rights and defenses, whether legal, equitable, or otherwise, in respect of such claims and all such rights and defenses of all Debtors (including any right of counterclaims or right of set off) shall continue following the Effective Date.

(c) *Voting*:  Unimpaired.  Each Holder of a Canadian General Unsecured Claim will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of a Canadian General Unsecured Claim will not be entitled to vote to accept or reject the Plan.

8.  Class 6 – Intercompany Claims

(a) *Classification*:  Class 6 consists of all Intercompany Claims.

(b) *Treatment*:  To preserve the Debtors' corporate structure, as of the Effective Date, Intercompany Claims shall be Reinstated, cancelled, or compromised as determined by the Debtors, with the consent of the Requisite Consenting Lenders.

(c) *Voting*:  Impaired or Unimpaired.  Each Holder of an Intercompany Claim will be conclusively deemed to have (a) rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and will not be entitled to vote to accept or reject the Plan or (b) accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and will not be entitled to vote to accept or reject the Plan.

26

9.  Class 7 – Existing Equity Interests

   (a)   *Classification*:  Class 7 consists of Existing Equity Interests.

   (b)   *Treatment*:  On the Effective Date, all Existing Equity Interests shall be discharged, cancelled, released, and extinguished.[4]

   (c)   *Voting*:  Impaired.  Each Holder of an Existing Equity Interest will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each Holder of an Existing Equity Interest will not be entitled to vote to accept or reject the Plan.

10.  Class 8 – Intercompany Interests

   (a)   *Classification*:  Class 8 consists of all Intercompany Interests.

   (b)   *Treatment*:  To preserve the Debtors' corporate structure, on the Effective Date, all Intercompany Interests shall be cancelled or Reinstated, as determined by the Debtors, with the consent of the Requisite Consenting Lenders, which consent shall not be unreasonably withheld.

   (c)   *Voting*:  Unimpaired.  Each Holder of an Intercompany Interest will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and will not be entitled to vote to accept or reject the Plan.

11.  Class 9 – Section 510(b) Claims

   (a)   *Classification*:   Class 9 consists of Section 510(b) Claims against the Debtors.

   (b)   *Treatment*:   On the Effective Date, all Section 510(b) Claims shall be cancelled without any distribution.

   (c)   *Voting*:  Impaired.  Each Holder of a Section 510(b) Claim will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each Holder of a Section 510(b) Claim will not be entitled to vote to accept or reject the Plan.

---

[4]  Following the Petition Date, the Debtors received a letter from certain Holders of Existing Equity Interests in Payless Holdings LLC asserting entitlement to certain assets of Payless Holdings LLC with an approximate value of $5 million.  These Holders have requested that such value be preserved for distributions to Holders of Existing Equity Interests.  The Debtors are evaluating the assets and liabilities at each Debtor and reserve all rights related thereto, including the right to modify the proposed treatment of Claims in Class 7 under the Plan as a result of such evaluation.

27

C.    *Special Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Acceptance or Rejection of the Plan*

1.    Presumed Acceptance of Plan

Classes 1, 2, 5C and 8, and certain Class 6 Claims are Unimpaired under the Plan, and are, therefore, presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

2.    Voting Classes

Each Holder of an Allowed Claim in each of Classes 3, 4, 5A, and 5B shall be entitled to vote to accept or reject the Plan.

3.    Presumed Rejection of Plan

Class 7 Existing Equity Interests, Class 9 Section 510(b) Claims, and certain Class 6 Claims shall receive no distribution under the Plan on account of their Existing Equity Interests and Claims, and are, therefore, presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

4.    Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class thereof, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

E.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Acceptance of the Plan by either Class 3, 4, 5A, or 5B will satisfy section 1129(a)(10) of the Bankruptcy Code.  The Debtors will seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any rejecting class of Claims or Equity Interests.

F.    *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

28

# ARTICLE IV.

# MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Equity Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B.      *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, merger, or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that the Reorganized Debtors determine are necessary or appropriate; *provided*, *however*, that no such restructuring transactions may violate the terms of any Unexpired Lease assumed by the Debtors.

C.      *The New Credit Facilities and Approval of the New Credit Facilities*

Confirmation of the Plan shall be deemed to constitute approval of the New Credit Facilities and the New Credit Facilities Documents (including all transactions contemplated thereby and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their obligations under the New Credit Facilities Documents and such other documents as may be reasonably required or appropriate, in each case, in accordance with the New Credit Facilities Documents.

KE 46471280

On the Effective Date, the New Credit Facilities Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New Credit Facilities Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the liens and security interests to be granted in accordance with the New Credit Facilities Documents (a) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Credit Facilities Documents, (b) shall be deemed automatically attached and perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the New Credit Facilities Documents, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Entities granted such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach, and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties. To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or any administrative agent under the New Credit Facilities Documents that are necessary to cancel and/or extinguish such liens and/or security interests.

D.    *Corporate Existence*

Subject to any restructuring transactions as permitted under Article IV.B, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other similar formation and governance documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation or bylaws (or other similar formation and governance documents) are amended by or in connection with the Plan or otherwise, and, to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and

30

require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

E.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.    *Cancellation of Prepetition Credit Agreements and Equity Interests*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under the Prepetition Credit Agreements and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan), shall be cancelled solely as to the Debtors and their Affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their Affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged.   Notwithstanding the foregoing, no Executory Contract or Unexpired Lease that (i) has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date, except that:

- the Prepetition Credit Agreements shall continue in effect solely for the purpose of: (i) allowing Holders of the ABL DIP Claims, Prepetition First Lien Credit Agreement Claims, and Prepetition Second Lien Credit Agreement Claims, as applicable, to receive the distributions provided for under the Plan; (ii) allowing the Prepetition Agents to receive distributions from the Debtors and to make further distributions to the Holders of such Claims on account of such Claims, as set forth in Article VI.A of the Plan; and (iii) preserving the Prepetition Agents' right to indemnification pursuant and subject to the terms of the Prepetition Credit Agreements in respect of any Claim or Cause of Action asserted against the Prepetition Agents; *provided* that any Claim or right to payment on account of such indemnification by the Debtors shall be an unsecured Claim

31

and shall not be secured in any of the assets of the Debtors, Reorganized Debtors, or their Affiliates; and

- the foregoing shall not affect the cancellation of shares issued pursuant to the Plan nor any other shares held by one Debtor in the capital of another Debtor.

G.    *Sources of Cash for Plan Distributions and Transfers of Funds Among Debtors*

All Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be funded with proceeds from the New ABL Facility and Cash on hand as of the Effective Date.   Specifically, the Debtors expect that the New ABL Facility will provide sufficient Cash to pay all DIP ABL Claims.[5]   Additionally, prior to the Effective Date, the Debtors may draw remaining available proceeds, if any, under the Term DIP Facility (subject to and in accordance with the Final DIP Order).  The Debtors will rely on this draw under the Term DIP Facility and Cash on hand to fund other payments required for emergence.

In making such Cash payments, the Debtors and the Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth in the Plan, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date financing, shall have the right and authority without further order of the Bankruptcy Court, to raise additional capital and obtain additional financing as the boards of directors of the applicable Reorganized Debtors deem appropriate.

H.    *Payment of Commitment Fees*

On the Effective Date, to the extent any portion of the commitments under the Term DIP Facility are not borrowed, the Reorganized Debtors shall pay a Cash fee equal to 3% of the commitments under the Term DIP Facility that are not borrowed to each Backstop Lender in accordance with the DIP Documents.

On the Effective Date, to the extent any portion of the commitments under the Term DIP Facility are not borrowed, the Reorganized Debtors shall pay a Cash fee equal to 2% of the commitments under the Term DIP Facility that are not borrowed to each lender under the Term DIP Facility in accordance with the DIP Documents.

On the Effective Date, the Reorganized Debtors shall pay the Exit Commitment Fee to lenders under the Term DIP Facility in accordance with the DIP Documents.

---

[5]    The New ABL Facility is expected to include guarantees from the Canadian Debtors.

I.    *Worldwide GUC Cash-Out Election*

Each Holder of a Class 5B Worldwide General Unsecured Claim shall have the option to elect on its Ballot to receive a Worldwide GUC Cash-Out Option Payment instead of its Pro Rata share of the Worldwide New Equity Recovery. The Worldwide GUC Cash-Out Option Payment will be funded using the Debtors' available Cash on hand or proceeds of the Term DIP Facility.

J.    *Effectuating Documents and Further Transactions*

The Debtors or the Reorganized Debtors, as applicable, may take all actions to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant hereto. The secretary and any assistant secretary of each Debtor shall be authorized to certify or attest to any of the foregoing actions. Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors, or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers, or partners of the Debtors, or the need for any approvals, authorizations, actions or consents.

K.    *Issuance of New Equity*

1.    <u>New Equity</u>

On the Effective Date, the Reorganized Debtors shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan. The issuance of such documents is authorized without the need for any further corporate action or without any further action by the Holders of Claims or Interests. Distributions of New Equity will only be made through broker accounts via electronic issuance and Reorganized Holdings will not issue separate stock certificates.

2.    <u>Shareholders Agreements</u>

On the Effective Date, Holders of New Equity shall be parties to a Shareholders Agreement, in substantially the form included in the Plan Supplement, and which shall otherwise be satisfactory to the Requisite Consenting Lenders. On the Effective Date, Reorganized Holdings and the Requisite Consenting Lenders shall enter into and deliver the Shareholders Agreement to each Entity that is intended to be a party thereto and such Shareholders Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of New Equity shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized Holdings.

33

### 3.  Private Companies

On the Effective Date, the Reorganized Debtors shall be private, non-SEC reporting companies.

### L.    *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, and/or the safe harbor of Regulation D promulgated thereunder, or such other exemption as may be available from any applicable registration requirements, the offering, issuance, and distribution of any securities pursuant to the Plan and any and all settlement agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act to the maximum extent permitted thereunder and and any other applicable law requiring registration by virtue of section 1145 of the Bankruptcy Code, prior to the offering, issuance, distribution, or sale of securities.  In addition, to the maximum extent provided under section 1145 of the Bankruptcy Code, any and all New Equity contemplated by the Plan and any and all settlement agreements incorporated therein will be freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Reorganized Debtors (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

### M.    *New Organizational Documents*

On or immediately prior to the Effective Date, the organizational documents of each of the Debtors shall be amended and restated, as may be necessary to effectuate the transactions contemplated by the Plan, in a manner consistent with section 1123(a)(6) of the Bankruptcy Code and shall otherwise be satisfactory to the Requisite Consenting Lenders.  Each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation.  The New Organizational Documents will prohibit the issuance of non-voting equity securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

### N.    *Exemption from Certain Transfer Taxes and Recording Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage

34

tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

O.      *Directors and Officers of Reorganized Holdings and Other Reorganized Debtors*

The initial directors and officers of the Reorganized Holdings shall be selected by the Requisite Consenting Lenders. Unless otherwise set forth in the Plan Supplement, the existing directors of each of the subsidiary Debtors shall remain in their current capacities as directors of the applicable Reorganized Debtor until replaced or removed in accordance with the organizational documents of the applicable Reorganized Debtors. The identity of each of the members of the New Board will be disclosed prior to the Confirmation Hearing and any directors elected pursuant to this section shall be subject to approval of the Bankruptcy Court pursuant to and to the extent necessary to satisfy section 1129(a)(5) of the Bankruptcy Code.

P.      *Avoidance Actions*

The Reorganized Debtors will retain all rights to commence and pursue any and all Avoidance Actions.

Q.      *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX below, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including Article IX. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX of the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the

35

doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

The Reorganized Debtors reserve and shall retain the Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor, except as otherwise expressly provided in the Plan, including Article IX of the Plan. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

R.      *Directors and Officers Insurance Policies and Agreements*

Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or prior to the Petition Date pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed.

After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date of the Plan shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date of the Plan.

S.      *Compensation and Benefits Programs*

Unless otherwise provided herein or in the Plan Supplement, the Confirmation Order, or any applicable agreements binding on the Debtors, all employee wages, compensation, and benefit programs in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from

and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

1. <u>Management Equity Incentive Plan</u>

Promptly on or as soon as practicable after the Effective Date, the New Board will adopt and implement the Management Equity Incentive Plan whereby equity awards for 6–10% of the New Equity (on a fully diluted basis) of Reorganized Holdings will be granted to continuing employees of the Debtors and members of the New Board with pricing, vesting and exercise terms to be determined by the New Board upon consultation with the Chief Executive Officer of Reorganized Holdings.

2. <u>Cash Incentive Program</u>

Promptly on or as soon as practicable after the Effective Date, the Reorganized Debtors will assume the Cash Incentive Program.

3. <u>Continuation of Retiree Benefits</u>

The Reorganized Debtors' obligations with respect to the payment of "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy Code) shall continue for the duration of the periods the Debtors have obligated themselves to provide such benefits, if any, subject to any contractual rights to terminate or modify such benefits.

4. <u>Workers' Compensation Programs</u>

As of the Effective Date, the Debtors and the Reorganized Debtors shall continue to honor their obligations under: (i) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (ii) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance, including without limitation, any Insurance Policies providing workers' compensation insurance coverage to the Debtors.

All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs and plans; *provided*, *further*, that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state law.

# ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease, not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) is the subject of a motion to assume such Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (3) is a contract, release, or other agreement or document entered into in connection with the Plan.

Entry of the Confirmation Order by the Bankruptcy Court shall, subject to and upon the occurrence of the Effective Date, constitute a Bankruptcy Order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases assumed or rejected pursuant to the Plan.   Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.   Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, unless otherwise agreed by the Debtors and the applicable counterparty to the Executory Contract or Unexpired Lease, and except as such terms are modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.   Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right (subject to the consent of the Requisite Consenting Lenders) to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases (i) to add or remove any Executory Contract or Unexpired Lease to the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the Confirmation Date, and (ii) to remove any Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time through and including the Confirmation Date.   The Debtors or the Reorganized Debtors shall provide notice of any amendments to the Schedule of Assumed Executory Contracts and Unexpired Leases to the parties to the Executory Contracts or Unexpired Leases affected thereby.   In any case, if the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, will have the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases in which case such Executory Contract or Unexpired Lease will be deemed to have been rejected as of the Effective Date.

B.    *Indemnification Obligations*

On the Effective Date, except as otherwise provided herein, all indemnification provisions, consistent with applicable law, in place as of the date of the Restructuring Support Agreement (whether in the bylaws, certificates of incorporation or formation, limited liability

38

company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be assumed, which assumption shall be irrevocable, and shall survive the Effective Date.

C.    *Directors and Officers Insurance Policies and Agreements*

Pursuant to Article IV.R hereof, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all unexpired D&O Liability Insurance Policies.

D.    *Insurance Policies*

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the New Credit Facility Documents, the Confirmation Order, the Claims Bar Date Order, any claim objection, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases), on the Effective Date, the Reorganized Debtors shall be deemed to have assumed all Insurance Policies (other than the D&O Liability Insurance Policies, which shall receive the treatment set forth in Article V.C of the Plan) and any agreements, documents, and instruments relating to coverage of all insured claims.  Except as set forth in Article V.C of the Plan, nothing (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such Insurance Policies or (2) alters or modifies the duty, if any, that the insurers or third-party administrators have to pay claims covered by such Insurance Policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any collateral or security therefor.  For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a Cure objection or a request, application, Claim, Proof of Claim, or motion for payment and shall not be subject to any Claims Bar Date or similar deadline governing Cure amounts or Claims.

E.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption, which Final Order or orders may, for the avoidance of doubt, be entered (and any related hearing may be held) after the Effective Date.

The Debtors shall file the Schedule of Assumed Executory Contracts and Unexpired Leases (including the proposed Cure Claim amounts) with the Plan Supplement. The Debtors will cause such notices of proposed assumption and proposed Cure amounts to be served by overnight delivery service upon the applicable contract counterparty affected by such notices and by email upon counsel of record for the applicable contract counterparty, if any. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure amount must be filed, served, and actually received by the Debtors no later than fourteen (14) days after the Plan Supplement Filing Date. Any such objections will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing after which such objection is timely filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have assented to such assumption or Cure amount. Notwithstanding the foregoing, all landlords' rights to recover amounts which have accrued or come due between the Cure objection deadline and the effective date of assumption are reserved.

To the extent that the Debtors amend the Schedule of Assumed Executory Contracts and Unexpired Leases after the objection deadline set forth in this section but prior to the Effective Date, any party to an Executory Contract or Unexpired Lease directly impacted by such amendment may object to the amended proposed Cure amount within 14 days of any such amendment. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing after which such objection is timely filed. To the extent any such dispute regarding the assumption of an Executory Contract or Unexpired Lease is not consensually resolved by the parties or otherwise resolved prior to the Effective Date, such assumption will be deemed to occur retroactively to the Effective Date if approved by the Bankruptcy Court.

Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors of any one of the following: (1) amounts listed on the Debtors' Schedule of Assumed Executory Contracts and Unexpired Leases, (2) amounts agreed to by the Debtors and the applicable counterparty, or (3) amounts as ordered by the Court; *provided*, *however*, that nothing shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Reorganized Debtors may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

**Any Proofs of Claim filed with respect to an Executory Contract, Unexpired Lease, or Insurance Policy that has been assumed pursuant to the provisions of the Plan shall be deemed satisfied upon the Debtors' curing of any and all defaults related thereto, without further notice to or action, order, or approval of the Bankruptcy Court.**

40

F.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within 14 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims as set forth in the Plan.

G.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

H.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

I.     *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

J.     *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contract and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

K.     *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, the Reorganized Debtors shall make initial distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as practicable after the Initial Distribution Date; *provided*, *however*, that payments on account of Other General Unsecured Claims that become Allowed Claims on or before the Effective Date shall commence on the Effective Date.

B.     *Disputed Unsecured Claims Reserves*

1.     Other General Unsecured Claims Reserve

From and after the Effective Date, and until such time as all Disputed Other General Unsecured Claims have been compromised and settled or determined by order of the Bankruptcy Court, for the benefit of each Holder of such claims, an amount of the Other General Unsecured Claims Recovery Pool shall be reserved in Cash, in an amount equal to lesser of (a) the amount of the Disputed Other General Unsecured Claims; (b) the amount in which the Other General

KE 46471280

Unsecured Claims shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim may ultimately become an Allowed Claim; and (c) such other amount as may be agreed upon by the Holder of such Other General Unsecured Claims and the Reorganized Debtors.  Any amount of the Other General Unsecured Claims Recovery Pool reserved and held for the benefit of a Holder of a Disputed Other General Unsecured Claim shall be treated as a payment and reduction on account of such Other General Unsecured Claim for purposes of computing any additional amounts to be paid to such Holder if the Other General Unsecured Claim ultimately becomes an Allowed Claim.  Such amount of the Other General Unsecured Claims Recovery Pool shall be reserved for the benefit of Holders pending determination of their entitlement thereto under the terms of the Plan.  No payments or distributions shall be made with respect to all or any portion of any Disputed Other General Unsecured Claim pending the entire resolution thereof by Final Order.

Any amount remaining in the reserve being held for the benefit of Disputed Other General Unsecured Claims after reconciliation of all Other General Unsecured Claims asserted against the Debtors shall be distributed to Holders of Allowed Other General Unsecured Claims in accordance with the provisions of the Plan.

2.    Worldwide General Unsecured Claims Reserve

From and after the Effective Date, and until such time as all Disputed Worldwide General Unsecured Claims have been compromised and settled or determined by order of the Bankruptcy Court, for the benefit of each Holder of such claims, the Debtors and Reorganized Debtors shall maintain a reserve consisting of:

(a)    Worldwide New Equity Recovery of a value equal to the distributions of New Equity (after taking into account dilution from the Management Equity Incentive Plan and the Exit Commitment Fee), which would be made to the Holders of any Disputed Worldwide General Unsecured Claims who did not make the Worldwide GUC Cash-Out Election if such Claims were Allowed Claims, in an amount for each Disputed Worldwide General Unsecured Claim equal to the lesser of:  (i) the amount of such Disputed Worldwide General Unsecured Claim; (ii) the amount of such Disputed Worldwide General Unsecured Claim as estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount of such Claim that may ultimately become an Allowed Claim; and (iii) such other amount as may be agreed upon by the Holder of such Worldwide General Unsecured Claim and the Reorganized Debtors.  Any amount of the Worldwide New Equity Recovery reserved and held for the benefit of a Holder of a Disputed Worldwide General Unsecured Claim shall be treated as a payment and reduction on account of such Worldwide General Unsecured Claim for purposes of computing any additional amounts to be paid to such Holder if such Worldwide General Unsecured Claim

43

ultimately becomes an Allowed Claim.  Such amount of the Worldwide New Equity Recovery shall be reserved for the benefit of Holders pending determination of their entitlement thereto under the terms of the Plan; and

(b)    an amount of Cash equal to the distributions of Cash that would be made to the Holders of Disputed Worldwide General Unsecured Claims for which such Holders made the Worldwide GUC Cash-Out Election if such Claim were an Allowed Claim in an amount equal to the lesser of G(2)(b)(i)–(iii) above.  Any amount of Cash reserved and held for the benefit of a Holder of a Disputed Worldwide General Unsecured Claim shall be treated as a payment and reduction on account of such Worldwide General Unsecured Claim for purposes of computing any additional amounts to be paid to such Holder if such Worldwide General Unsecured Claim ultimately becomes an Allowed Claim.

For the avoidance of doubt, distributions from the reserve to Holders of Disputed Worldwide General Unsecured Claims whose Claims become Allowed and who made the Worldwide GUC Cash-Out Election shall be made in Cash in accordance with the Plan and the amount of New Equity that would have been received by such Holder shall be removed from the reserve and instead be subsequently distributed on a Pro Rata basis to Holders of Prepetition First Lien Credit Agreement Claims in accordance with the Plan.

After each Periodic Distribution Date, the Reorganized Debtors may reduce the applicable reserve established pursuant to this Section VI.B.2 by any amount distributed from such reserve on such Periodic Distribution Date.

Any amount remaining in the reserve being held for the benefit of Disputed Worldwide General Unsecured Claims after reconciliation of all asserted Worldwide General Unsecured Claims shall be distributed to Holders of Allowed Worldwide General Unsecured Claims in accordance with the provisions of the Plan.

C.    *Distributions on Account of Claims Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the first Periodic Distribution Date after the Disputed Claim becomes an Allowed Claim from the applicable reserve.  If a Holder made the Worldwide GUC Cash-Out Election on a timely cast and valid Ballot, such Holder will receive its Pro Rata share of Cash from the Worldwide General Unsecured Claims Reserve.  If a Holder did not make the Worldwide GUC Cash-Out Election on a timely cast and valid Ballot or did not submit a Ballot, such Holder will receive its Pro Rata share of the Worldwide New Equity Recovery.

44

Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

2.  Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims.

D.  *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on or as soon as practicable after the date that such a Claim becomes an Allowed Claim), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Distributions on account of Other General Unsecured Claims that become Allowed Claims before the Effective Date shall be paid on the Effective Date.

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the applicable class treatment or in this Article VI.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

E.  *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

1.  Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim, other than one based on a publicly-traded security is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.  Delivery of Distributions in General

Except as otherwise provided in the Plan, the Debtors or the Reorganized Debtors, as applicable shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the

45

Debtors or the Reorganized Debtors, as applicable; and *provided further*, that the address for each Holder of an Allowed Claim shall be the address set forth in any Proof of Claim filed by that Holder.

### 3.    Delivery of Distributions to Prepetition First Lien Credit Agreement Claims

The Prepetition First Lien Agent shall be deemed to be the Holder of all Prepetition First Lien Credit Agreement Claims, as applicable, for purposes of distributions to be made hereunder, and all distributions on account of such Prepetition First Lien Credit Agreement Claims shall be made to or on behalf of the Prepetition First Lien Agent.  The Prepetition First Lien Agent shall hold or direct such distributions for the benefit of the Holders of Allowed Prepetition First Lien Credit Agreement Claims, as applicable.  As soon as practicable following compliance with the requirements set forth in this Article VI of the Plan, the Prepetition First Lien Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of such Holders of Allowed Prepetition First Lien Credit Agreement Claims.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Prepetition First Lien Agent shall not have any liability to any person with respect to distributions made or directed to be made by the Prepetition First Lien Agent.

### 4.    Delivery of Distributions to Prepetition Second Lien Credit Agreement Claims

The Prepetition Second Lien Agent shall be deemed to be the Holder of all Prepetition Second Lien Credit Agreement Claims, as applicable, for purposes of distributions to be made hereunder, and all distributions on account of such Prepetition Second Lien Credit Agreement Claims shall be made to or on behalf of the Prepetition Second Lien Agent.  The Prepetition Second Lien Agent shall hold or direct such distributions for the benefit of the Holders of Allowed Prepetition Second Lien Credit Agreement Claims, as applicable.  As soon as practicable following compliance with the requirements set forth in this Article VI of the Plan, the Prepetition Second Lien Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of such Holders of Allowed Prepetition Second Lien Credit Agreement Claims.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan, the Prepetition Second Lien Agent shall not have any liability to any person with respect to distributions made or directed to be made by the Prepetition Second Lien Agent.  On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, shall pay in Cash all reasonable and documented (in summary form) fees, costs, and expenses incurred by the Prepetition Second Lien Agent prior to the Effective Date, which shall include the reasonable and documented fees and expenses of Pryor Cashman LLP (including for services, if any, provided prior to the Petition Date), without the need for the Prepetition Second Lien Agent to file a fee application with the Bankruptcy Court.  From and after the Effective Date, the Reorganized Debtors shall pay in Cash the reasonable and documented fees, costs, and expenses incurred by the Prepetition Second Lien Agent (including the reasonable and documented fees and expenses of Pryor Cashman LLP for services rendered on or after the Effective Date) in connection with distributions to Holders of Allowed Prepetition Second Lien Credit Agreement Claims in accordance with the Plan.

5.   Distributions by Distribution Agents (if any)

The Debtors and the Reorganized Debtors, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.  To the extent the Debtors and the Reorganized Debtors, as applicable, do determine to utilize a Distribution Agent to facilitate the distributions under the Plan to Holders of Allowed Claims, any such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; (c) waive any right or ability to setoff, deduct from, or assert any lien or encumbrance against the distributions required under the Plan to be distributed by such Distribution Agent; and (d) post a bond, obtain a surety bond, or provide some other form of security for the performance of its duties, the costs and expenses of procuring which shall be borne by the Debtors or the Reorganized Debtors, as applicable.

The Debtors or the Reorganized Debtors, as applicable, shall pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions, or consents.  The Distribution Agents shall submit detailed invoices to the Debtors or the Reorganized Debtors, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtors or the Reorganized Debtors, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors or the Reorganized Debtors, as applicable, deem to be unreasonable.  In the event that the Debtors or the Reorganized Debtors, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtors or the Reorganized Debtors, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Debtors or the Reorganized Debtors, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

6.   Minimum Distributions

Notwithstanding anything herein to the contrary, the Reorganized Debtors shall not be required to make distributions or payments of less than $10 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars.  Whenever any payment or distribution of a fraction of a dollar or fractional share of New Equity under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar or share of New Equity (up or down), with half dollars and half shares of New Equity or less being rounded down.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim if: (a) the aggregate amount of all distributions authorized to be made from on the Periodic Distribution Date in question is or has an economic value less than $25,000, unless such distribution is a final distribution; or (b) the amount to be distributed to the specific Holder of an Allowed Claim on such Periodic Distribution Date does not constitute a final distribution to

47

such Holder and is or has an economic value less than $10, which shall be treated as an undeliverable distribution under Article VI.E.7 below.

### 7. Undeliverable Distributions

#### (a)    Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors (or their Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtors (or their Distribution Agent) are notified in writing of such Holder's then current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, subject to Article VI.E.7(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

#### (b)    Failure to Claim Undeliverable Distributions

No later than 120 days after the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of undeliverable distributions. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtors of such Holder's then current address in accordance herewith within 180 days of the Effective Date, shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.

In such cases, (i) any Cash or New Equity held for distribution on account of Allowed Claims shall be redistributed to Holders of Allowed Claims in the applicable Class on the next Periodic Distribution Date and (ii) any Cash held for distribution to other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtors, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

#### (c)    Failure to Present Checks

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of any un-negotiated checks no later than 160 days after the issuance of such checks. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open. Requests for reissuance of any check shall be made directly to the Distribution Agent

48

by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.

Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 120 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtors, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

F.        *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

G.        *Setoffs*

The Debtors and the Reorganized Debtors may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any Claims, Equity Interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. In the event that any such Claims, Equity Interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved Claims, Equity Interests, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claims, Equity Interests, rights, and Causes of Action that the

49

Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

H.    *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, National Edition, on the Effective Date.

I.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution from the Debtors or Reorganized Debtors on account of such Claim and also receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the total amount of such Claim as of the date of any such distribution under the Plan.  If the Debtors become aware of the payment by a third party, the Debtors or Reorganized Debtors, as applicable, will send a notice of wrongful payment to such party requesting return of any excess payments and advising the recipient of the provisions of the Plan requiring turnover of excess estate funds.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

50

3.   Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including any insurer(s) under any Insurance Policy, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under the Insurance Policies.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.   *Allowance of Claims*

After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately before the Effective Date.

B.   *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority:  (1) to file, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.   *Estimation of Claims*

Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

51

D.      *Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled, or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtors without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be filed on or before the later of (1) 180 days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such claims.

F.      *Disallowance of Claims*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.  All Claims filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.**

G.      *Amendments to Claim*

On or after the applicable bar date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors.  Absent such authorization, any new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

52

H.    *No Distribution Pending Allowance*

If an objection to a Claim or portion thereof is filed as set forth in Article VII.E, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.    *Distribution After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

# ARTICLE VIII.

# CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Confirmation of the Plan*

The following shall be satisfied or waived as conditions precedent to the Confirmation of the Plan:

1.    The Plan must be, in form and substance, reasonably acceptable to the Debtors, the Requisite Consenting Lenders, and the ABL DIP Lenders.

2.    The Debtors shall have achieved 85% of the projected rent savings from landlord concessions on ongoing lease obligations on an annual run-rate, which projected rent savings were agreed to prior to the Petition Date by (a) the Backstop Lenders and (b) the Debtors.

3.    The Definitive Documents shall satisfy the Definitive Document Restructuring Support Agreement Requirements.

4.    The proposed form of order confirming the Plan shall be, in form and substance, reasonably acceptable to the Debtors, the Requisite Consenting Lenders, and the ABL DIP Lenders.

B.    *Conditions Precedent to Effective Date*

The following shall be satisfied or waived as conditions precedent to the Effective Date:

1.    The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      The Definitive Documents shall satisfy the Definitive Document Restructuring Support Agreement Requirements.

3.      The Confirmation Order shall have been entered and become a Final Order.  The Confirmation Order shall provide that, among other things, the Debtors or the Reorganized Debtors, as appropriate, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing, and consummating the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with or described in the Plan.

4.      All documents and agreements necessary to implement the Plan, including, without limitation, the New Credit Facilities Documents, shall have (a) been tendered for delivery and (b) been effected or executed.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements, and the commitment fees described in Article IV.H of this Plan shall have been paid.

5.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws.

6.      The Professional Fee Escrow Account shall have been established and funded.

C.      *Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in this Article VIII may be waived by the Debtors, with the consent of the Requisite Consenting Lenders and the ABL DIP Lenders, without notice to parties in interest and without any further notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

E.      *Effect of Non Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

# ARTICLE IX.

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.    *Compromise and Settlement*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

### B.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

### C.    *Discharge of Claims and Termination of Equity Interests*

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Equity Interests in, the Debtors, the Reorganized Debtors, or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Equity Interests relate to services performed by current or former employees of the Debtors prior to the Effective

55

Date and arise from a termination of employment or a termination of any employee or retiree benefit program regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the occurrence of the Effective Date.

D.    *Release of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article III hereof and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.

E.    *Debtor Release*

**Notwithstanding anything to the contrary herein, the "Debtor Release" shall not operate to waive or release any Causes of Action of any Debtor that the Boards of Directors of the Debtors determine, after investigation, should be excluded from this "Debtor Release." All rights of the Debtors and the Board of Directors to make changes to the terms of the Debtor Release solely based on the outcome of such investigation are reserved as of the date of the filing of this Plan.[6]**

---

[6]    In January 2017, Charles Cremens was appointed to serve as an independent director of the Board of Directors of Payless Holdings LLC, to, among other things, assist the Debtors' restructuring efforts. In that capacity, Mr. Cremens had Payless Holdings LLC retain Munger, Tolles & Olson LLP ("MTO") to advise and assist Mr. Cremens with respect to conflicts matters. In addition to participating as a member of the Board of Directors in decisions regarding the restructuring, Mr. Cremens also has been conducting an investigation into any estate claims and estate causes of action the Debtors may have with respect to transactions between the Debtors and the Sponsors. In particular, MTO, at the direction of Mr. Cremens and with the assistance of the existing financial professionals of the Debtors, has been investigating dividends paid by certain of the Debtors on February 28, 2013 and March 10, 2014 (the "Dividends"), the 2012 acquisition of the Payless companies by the Sponsors, and management and transaction fees paid to the Sponsors under that certain Advisory Agreement dated as of October 9, 2012 among certain of the Debtors, GGC Administration, LLC, and Blum Capital Partners (collectively with the Dividends, the "Transactions"). The Debtors' release of any of these claims or causes of actions is subject to the conclusion of this investigation. The Debtors may modify the Plan, including the release provisions of the Plan, and the Debtors reserve all rights and claims with respect thereto.

> **For purposes of voting on the Plan or considering whether to object to the Plan, all Holders of Claims and Interests should assume the following Debtor Release will not be changed.**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, the Debtors, the Reorganized Debtors, and any Person seeking to exercise the rights of the Estates, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code shall be deemed to forever release, waive, and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, including, without limitation, those that any of the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any claim or Equity Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale, or rescission or the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring of claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, or occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes criminal conduct, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary herein, the "Debtor Release" shall not operate to waive or release any Causes of Action of any Debtor:  (1) arising under any contract, instrument, agreement, release, or document delivered pursuant to the Plan, including, without limitation, the New ABL Facility Documents, the New First Lien Term Loan Facility Documents, or the Shareholders Agreement or documents, agreements, or instruments executed in connection therewith, or (2) expressly set forth in and preserved by the Plan, the Plan Supplement, or related documents.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, *and further*, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement

and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (4) fair, equitable and reasonable; (5) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (6) a bar to any of the Debtors or the Reorganized Debtors asserting any claim released by the Debtor Release against any of the Released Parties.

F.    *Third-Party Release*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to forever release, waive, and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity, or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, including, without limitation, those that any of the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale, or rescission or the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments or other documents, or upon any other act or omission, transaction, or occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes criminal conduct, willful misconduct, or gross negligence.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, *and further*, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar

to any of the Releasing Parties asserting any Claim released by the Third-Party Release against any of the Released Parties.

G.    *Exculpation*

Upon and effective as of the Effective Date, the Debtors and their directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring consultants, and other professional advisors and agents will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code.

Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Plan supplement, or related documents, the Exculpated Parties shall neither have nor incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or arising from or relating in any way to, the Chapter 11 Cases, including, without limitation, the operation of the Debtors' businesses during the pendency of these Chapter 11 Cases; formulating, negotiating, preparing, disseminating, implementing, and/or effecting the Restructuring Support Agreement, the DIP Documents, the Disclosure Statement, and the Plan (including the Plan Supplement and any related contract, instrument, release, or other agreement or document created or entered into in connection therewith); the solicitation of votes for the Plan and the pursuit of Confirmation and Consummation of the Plan; the administration of the Plan and/or the property to be distributed under the Plan; the offer and issuance of any securities under the Plan; and/or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors.  In all respects, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its respective duties under, pursuant to, or in connection with the Plan.

Notwithstanding anything herein to the contrary, nothing in the foregoing "Exculpation" shall exculpate any Person or Entity from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages, or ultra vires acts as determined by a Final Order.

H.    *Injunction*

The satisfaction, release, and discharge pursuant to this Article IX of the Plan shall also act as an injunction against any Person commencing or continuing any action, employment of process or act to collect, offset, or recover any claim or Cause of Action satisfied, released, or discharged under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.

I.    *No Release of Any Claims Held by the United States*

Nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority

59

whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any Claim, suit, action, or other proceedings against the Released Parties for any liability whatever, including, without limitation, any Claim, suit, or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Released Parties.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

60

7.    Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.    Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

12.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

14.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.    Enter an order or final decree concluding or closing the Chapter 11 Cases;

17.    Adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.    Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.    Determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.    Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any Entity's obligations incurred in connection

61

with the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan (other than any dispute arising after the Effective Date under, or directly with respect to, the New ABL Credit Agreement, the New First Lien Term Loan Credit Agreement and any intercreditor agreement relating thereto, and the Shareholders Agreement, which disputes shall be adjudicated in accordance with the terms of such agreements);

21.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

23.     Enforce all orders previously entered by the Bankruptcy Court; and

24.     Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI.

## MODIFICATION, REVOCATION AND WITHDRAWAL OF THE PLAN

A.     *Modification of Plan*

Subject to the limitations contained in the Plan, the Restructuring Support Agreement, the ABL DIP Facility, and the Term DIP Facility, and in accordance with the Restructuring Support Agreement:  (1) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, upon the order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.     *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     *Revocation of Plan*

Subject to the Restructuring Support Agreement and conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan,

KE 46471280

or if entry of the Confirmation Order or the Effective Date does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.   Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) any Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

D.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

E.    *Service of Documents*

After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed renewed requests for service.

In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Confirmation Order, the Debtors shall serve a notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with notice of the Confirmation Hearing; *provided*, *however*, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors served the notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

To supplement the notice described in the preceding sentence, within twenty (20) days of the date of the Confirmation Order the Debtors shall publish notice of the Confirmation Hearing on one occasion in the national editions of *The Wall Street Journal* and *USA Today*. Mailing and publication of the notice of the Confirmation Hearing in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

F.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.   All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.    *Entire Agreement*

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided*, *however*, that corporate governance matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated or organized in New York shall be governed by the laws of the place of incorporation or organization of the applicable Debtor or Reorganized Debtor, as applicable.

I.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date.  After the exhibits and documents are filed, copies of such exhibits and documents shall have been available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' private website at https://cases.primeclerk.com/payless or the Bankruptcy Court's website at www.moeb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.      *Nonseverability of Plan Provisions Upon Confirmation*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

K.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

L.      *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

M.      *Dissolution of Creditors' Committee*

The Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases on the Effective Date; *provided*, that the Creditors' Committee shall be deemed to remain in existence solely with respect to, and shall not be heard on any issue except, applications filed by the Retained Professionals pursuant to sections 330 and 331 of the Bankruptcy Code.   The Reorganized Debtors shall not be responsible for paying fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date.

N.      *Section 1125(e) Good Faith Compliance*

The Debtors, Reorganized Debtors, the Prepetition Agents, the DIP Agents, and the Creditors' Committee, and each of their respective representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

O.      *Further Assurances*

The Debtors, Reorganized Debtors, all Holders of Claims receiving distributions hereunder, and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

P.      *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

Q.      *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

R.        *Payment of Restructuring Support Advisor and DIP Document Fees*

Prior to the occurrence of the Effective Date of the Plan, the Debtors will indefeasibly pay in full, in Cash all fees and expenses due and owing (or good-faith estimates thereof) to lenders or advisors pursuant to the terms of the Restructuring Support Agreement, the Final DIP Order, or the Definitive Documents that have not previously been paid.

KE 46471280

Respectfully submitted,

Date:  June 5, 2017

By:      /s/  Michael Schwindle
Name:   Michael Schwindle
Title:     Chief Financial Officer, Payless ShoeSource, Inc.